## Royal Liquor License Case.

Argued September 22, 1959.  Before RHODES, P. J., HIRT, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (GUNTHER, J., absent).

*Leon H. Fox, Sr.,* with him *Fox and Fox,* for appellant.

*William N. J. McGinniss,* Special Assistant Attorney General, with him *George G. Lindsay* and *Horace A. Segelbaum,* Assistant Attorneys General, and *Anne X. Alpern,* Attorney General, for appellee.

OPINION BY HIRT, J., November 11, 1959:

John Rozycki and Josephine his wife, the parents of Roy A. Royal, the present appellant, bought four adjoining lots identified as lots 7, 8, 9 and 10 as numbered on a plan of Fair Oaks Subdivision in Horsham

Township, recorded in the office of the Recorder of Deeds of Montgomery County in 1926. The tract, triangular in shape, comprises about 33 acres of land and is bounded by Easton Road, by Township Line Road and by Hatboro Pike. The deeds to Rozycki and wife specifically conveyed each of the above numbered lots "UNDER AND SUBJECT, nevertheless, to the following restrictions: That said party of the second part, his heirs and assigns, will not, at any time hereafter, forever, erect or build or cause or permit to be erected or built upon the hereby granted lot of ground or upon any part thereof, *any tavern, drinking saloon,* sugar house, factory, blacksmith, carpenter or wheelwright shop, steam mill, tannery, slaughter house, skin dressing establishment, livery stable, public garage, glue, soap, candle or starch factory, or any building for offensive use or occupation, whatsoever." (Emphasis added). Identical restrictions were imposed on all lots by the plot of the subdivision as recorded. Royal leased all of the four lots, fronting on Easton Road from his parents and in 1933 erected a building on the premises which he has operated, beginning in 1955, as a snack bar which "serves restaurant meals and also light lunches, ice cream and allied drinks, non-alcoholic." In 1939 the land fronting on Easton Road (as well as on Township Line Road and on Hatboro Pike) was zoned "Commercial" by the township, and there is testimony that the occupancy of both sides of Easton Road increasingly has been in the direction of commercial uses.

Royal, to extend the scope of his business, and with the intention of opening a dining room on his premises at 160 Easton Road made an application for a restaurant liquor license. It is conceded that the building is suitable in every respect and there was no objection on that score. The Liquor Control Board however re-

fused the application for a license for the single reason, thus stated in its order of February 18, 1959: "There is a deed restriction in the chain of title which prohibits the use of the building for a tavern or drinking saloon, which clearly implies that the property shall not be used for the sale of alcoholic beverages."

Before the lower court this appellant sought a reversal of the board on the question of administrative discretion under §464 of the Liquor Code of April 12, 1951, P. L. 90, 47 PS §4-464 on his contention that "by virtue of the change of conditions and character of the neighborhood and the enactment of the zoning ordinance above referred to the said conditions and restrictions have ceased to be of any substantial value to the property in question or to other property in said tract." In support of that position the appellant, at the hearing before the lower court, presented evidence of what he contended were violations of the above restrictions in at least 10 instances. The testimony indicates that within the subdivision fronting on Easton Road and also on Hatboro Pike, in addition to a number of private homes, there were an Esso Service Station, a Texaco Gasoline Station, a pharmacy, a commercial ice machine, a barber shop, a nursery, a neon sign company, an ornamental iron works, a body shop and a plumbing and heating business. It is not necessary for us to decide which, if any, of the above businesses conflict with the restrictions as to use of the land. The important consideration is the fact that at no time has there been a violation of the restriction against a "tavern" or "drinking saloon" and a restaurant licensed to sell liquor would come within that prohibited class. The present case is before us on appeal and not on certiorari as under prior legislation; and in any view of the evidence in this record violations of the restrictions were not countenanced to such

an extent as to indicate that the restrictive plan of the subdivision had been abandoned.

Although the land fronting on all of the three streets which bound the subdivision, were zoned "Commercial" in 1939, yet the character of the subdivision is still predominantly residential. There are at least 75 private dwellings on lots within the subdivision which were bought subject to the restriction with which we are concerned, and with knowledge that the same restriction applied to every other lot within the subdivision. The equity action in *Benner v. Tacony,* 328 Pa. 577, 196 A. 390 was brought to restrain a number of incorporated clubs from selling beer or liquor in violation of restrictions in title-deeds of the properties occupied by them. In that case it is said: "It requires no citation of authorities to support the proposition that the restriction in this case [i.e., "that no tavern or building for the sale of beer or liquor" shall at any time be erected . . . on the land] runs with the land . . . Presumably those who established residences in this area did so in reliance upon the neighborhood remaining more orderly and desirable by reason of the restriction." The holding of that case was that ". . . the fact that commercial establishments have crept in here and there does not impair the utility of the restriction . . ."; and violations of the restrictive covenant against the sale of beer or liquor may be enforced in equity.

In construing prior liquor control acts the Liquor Control Board uniformly applied the above principles to restrictions in deeds to property prohibiting its use for the sale of intoxicating liquors. And we have consistently supported the Board by holding that it can lawfully refuse to issue a restaurant liquor license where there is a restriction, in the deed to the property, which prohibits its use for that purpose. *Cheris's*

*Liquor License Case,* 127 Pa. Superior Ct. 355, 193 A. 162. Cf. *McGettigan's Liquor License Case,* 131 Pa. Superior Ct. 280, 200 A. 213; *Fanning's License,* 23 Pa. Superior Ct. 622. The intent of the present Liquor Code, supra, is the same as the legislation which it supplanted and the lower court properly dismissed the appeal from the decision of the Liquor Control Board in this case.

Order affirmed.