602 A.2d 476

**K & K ENTERPRISES, INC., Appellant,**

**v.**

**PENNSYLVANIA LIQUOR CONTROL BOARD, Appellee.**

Commonwealth Court of Pennsylvania.

Submitted Oct. 25, 1991.

Decided Jan. 17, 1992.

120

Gary F. DiVito, for appellant.

No appearance for appellee.

Before CRAIG, President Judge, PALLADINO, J., and BARRY, Senior Judge.

CRAIG, President Judge.

K & K Enterprises, Inc., applicant, appeals from a decision of the Court of Common Pleas of Philadelphia County which affirmed a decision of the Pennsylvania Liquor Control Board (board) denying applicant's application for the transfer of a liquor license. We vacate the trial court's

order denying the transfer of the liquor license and remand the case for findings consistent with this opinion.

The facts in this case, as found in the trial court's opinion, are as follows. The applicant is the operator of a fast food restaurant located at 448 South 52nd Street, Philadelphia, Pennsylvania. The applicant's restaurant is located within 300 feet of Black Oak Park, a community park controlled by the City of Philadelphia, and within 300 feet of Lois' Learning Tree Day Care Center.

The applicant sought a double transfer, i.e., person-to-person and place-to-place, of liquor license No. R–2275 for the premises located at 448 South 52nd Street. The board initially refused the application. On June 26, 1989, a board examiner conducted a hearing and on October 16, 1989, the board examiner, relying upon § 404 of the Liquor Code,[1] denied the application for the double transfer, finding:

1. The proposed licensed premises is located within 200 feet of another establishment licensed by this Board.

2. The proposed licensed premises is located within 300 feet of Lois' Learning Tree Day Care and Black Oak Park.

3. The approval of this application would adversely affect the health, welfare, peace and morals of the neighborhood within a radius of 500 feet.

---

1. Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. § 4–404. Section 404 states, in pertinent part:

 Upon receipt of the application, ... the board shall, in the case of a hotel or restaurant, grant and issue to the applicant a liquor license, ... Provided, however, That in the case of any new license or the transfer of any license to a new location the board may, in its discretion, grant or refuse such new license or transfer if such place proposed to be licensed is within three hundred feet of any church, hospital, charitable institution, school, or public playground, or if such new license or transfer is applied for a place which is within two hundred feet of any other premises which is licensed by the board: And provided further, That the board shall refuse any application for a new license or the transfer of any license to a new location if, in the board's opinion, such new license or transfer would be detrimental to the welfare, health, peace and morals of the inhabitants of the neighborhood within a radius of five hundred feet of the place proposed to be licensed....

On November 6, 1989, the applicant filed an appeal to the common pleas court, and on March 9, 1990, the trial court conducted a de novo hearing. At the de novo hearing, the protestants presented the testimony of Carol Holden, Chairperson of The Friends of Black Oak Park, a non-profit corporation dedicated to preserving and maintaining Black Oak Park, Lois Pharr, operator of Lois' Learning Tree Day Care Center, Edward Gore, a resident in the area for 22 years, and State Representative James Roebuck, who represents the district.

The trial court affirmed the decision of the board and adopted the board's three reasons for denying the applicant's application. The trial court adopted the board's finding that another licensed establishment existed within 200 feet of applicant's restaurant despite discovering at the de novo hearing that this establishment's license had expired before the hearing. The trial court, in its opinion, explained:

> The Board found that Appellant's [applicant's] restaurant is located within 200 feet of a licensed establishment. The license of the facility referenced by the Board, however, had expired prior to the Board's hearing and was not renewed. Mr. Gore's testimony concerns a second facility, ["]Mary's Place,["] which was not mentioned in the Board's findings. An examination of the map introduced by Appellant's counsel reveals that ["]Mary's Place["] is within 200 feet of the restaurant owned by Appellant.

■ The applicant now appeals to this court,[2] seeking to overturn the decision of the trial court. On appeal to this court, the applicant raises the following four issues:

2. Our scope of review where a common pleas court has heard a liquor license matter de novo is limited to determining whether there is substantial evidence to support the common pleas court's findings or whether the common pleas court committed an error of law or abused its discretion. *Pennsylvania Liquor Control Board v. Bankovich*, 94 Pa.Commonwealth Ct. 93, 502 A.2d 794 (1986).

1. Whether the trial court committed an error of law in characterizing Black Oak Park as a "public playground" within the meaning of the Code.
2. Whether the trial court committed an error of law in characterizing Lois' Learning Tree Day Care Center as a "school" within the meaning of the Code.
3. Whether substantial evidence supports the trial court's finding that the approval of the application would adversely affect the health, welfare, peace and morals of the neighborhood within a radius of 500 feet.
4. Whether substantial evidence supports the trial court's finding that the proposed licensed premises is located within 200 feet of another establishment licensed by the board.

### 1. Whether Black Oak Park Is A "Playground" Under the Liquor Code

■ The applicant argues that the trial court erred in characterizing Black Oak Park as a "public playground" within the meaning of the Liquor Code.

The guiding case on this issue is *Pennsylvania Liquor Control Board v. Roscoe*, 60 Pa.Commonwealth Ct. 362, 431 A.2d 1119 (1979).

In *Roscoe*, the applicant filed an application for the transfer of a liquor license. The board denied the request because the proposed premises was within 300 feet of a municipal park and ballfield. The trial court overturned the board, stating that neither the municipal park nor the ballfield constituted a public playground as that word is used in § 404 of the Liquor Code. The board appealed to this court and we affirmed the trial court. This court stated:

> As the lower court aptly noted, at page 8 of its opinion:
> 'While parks and playgrounds fall under the common heading of recreational areas and facilities, they are readily distinguishable in that parks are designed for the public generally, playgrounds are designed for minor children exclusively.'

'Parks' is obviously a far more comprehensive word than 'playground'; a park may contain one or more playgrounds, or ballfields, but the reverse cannot be said so readily.

*Roscoe*, 60 Pa.Commonwealth Ct. at 365–66, 431 A.2d at 1121.

In the present case, Carol Holden testified that Black Oak Park is an open space which contains trees and benches and walkways and a structure with a bathroom and storage area. She also testified that there were no swings in the park and that ballplaying was not permitted. Thus, the park does not contain separate recreational facilities for children.

Because Black Oak Park lacks separate recreational facilities for children, Black Oak Park is not a "public playground" as defined by the *Roscoe* case. Therefore, the trial court erred in adopting the board's finding that the proposed licensed establishment is within 300 feet of a "public playground" as that term is used in the Code.

## 2. Whether the Trial Court Erred in Finding That Lois' Learning Tree Day Care Center Is A "School" Within The Meaning Of The Liquor Code

 The trial court stated that Lois' Learning Tree Day Care Center is a "school" within the meaning of the Code and therefore applicant's restaurant is located within 300 feet of a school. Applicant argues that the trial court's characterization of the day care center as a "school" is an error of law.

 The Liquor Code does not define school; therefore, we must construe it according to its common and approved meaning. 1 Pa.C.S. § 1903. "School" is defined in Webster's New Collegiate Dictionary as "1: An organization that provides instruction: as a: institution for the teaching of children." The definitions of "child day care" and "child day care center," found in § 1 of the Public Welfare Code [3], 62 P.S. § 1001, state:

---

**3.** Act of June 13, 1967, P.L. 31, *as amended.*

'**Child day care**' means care in lieu of parental care given for part of the twenty-four hour day to children under sixteen years of age, away from their own homes, but does not include child day care furnished in places of worship during religious services.

'**Child day care center**' means any premises operated for profit in which child day care is provided simultaneously for seven or more children who are not relatives of the operator, except such centers operated under social service auspices.

The trial court found that approximately 75 children between the ages of 9 months and 11 years old inhabit the day care center on a daily basis. Approximately 25 of the children attend the day care center after school. Thus, approximately 50 students are at the day care center all day. Lois Pharr, director of the day care center stated that during the course of the day she "teaches." Ms. Pharr stated that she has a curriculum for the day care center; however, the curriculum is not issued to the day care center by the Philadelphia School District or the Pennsylvania Department of Education.

"School" is defined by Webster's as an institution that teaches children. Undoubtedly, this day care center teaches children; however, as shown by the definitions found in the Public Welfare Code, the *primary* role of a day care center is child care in the absence of a parent or parents. Thus, we agree with the applicant that a day care center is not a school within the meaning of the Code, and the trial court erred in characterizing it as such.

3. *Whether The Trial Court Erred In Finding That The Proposed Licensed Restaurant Would Have An Adverse Effect Upon The Health, Morals And Welfare Of the Community*

■ The applicant argues that the testimony presented in opposition to the proposed licensed facility was not substantial, competent evidence that applicant's restaurant would

detrimentally effect the health, welfare, and morals of the neighborhood.

■ The legislature has established the principle that a licensed establishment is not ordinarily detrimental to the welfare, health and morals of the inhabitants of the neighborhood. Furthermore, a transfer of a liquor license will be detrimental to a community only in cases where the nature of the neighborhood and the nature of the place to be licensed are such that the issuance would be detrimental. *Parks v. Pennsylvania Liquor Control Board*, 44 Pa.Commonwealth Ct. 87, 403 A.2d 628 (1979).

Applicant cites *Logan Square Neighborhood Association Appeal*, 102 Pa.Commonwealth Ct. 224, 517 A.2d 581 (1986), for the proposition that perceived threats to the community from the transfer of the liquor license are not substantial competent evidence.

In *Logan Square*, this court affirmed an order of the trial court reversing the board's denial of the transfer of an existing liquor license. At the de novo hearing the objectors presented witnesses who objected to parking problems, noise, restaurant fumes, traffic problems and the perceived threat to their quiet, residential neighborhood. This court stated that there was no legal correlation between alcohol consumption and dangerous driving per se, and that the evidence presented did not show such a correlation.

In this case, Carol Holden testified that before the formation of the Friends of Black Oak Park in 1988, the park was a haven for drug traffic. Ms. Holden further testified that she is fearful that if the liquor license is approved, drug activity would increase.

However, without specific testimony regarding the correlation between alcohol consumption and illicit drug activity, this court cannot legally presume that such a correlation exists.

Because the testimony of all of the witnesses for the objectors conveyed general fears regarding the transfer of the license to the proposed facility and did not provide

specific details regarding the nature of applicant's restaurant, substantial evidence does not support the trial court's finding that the transfer of the license would have a detrimental effect on the neighborhood.

*4. Whether Substantial Evidence Supports the Trial Court's Finding That the Licensed Premises Is Within 200 Feet of the Proposed Licensed Premises*

■ The applicant argues that the court improperly calculated the distance from applicant's restaurant to "Mary's Place." At the de novo hearing, the trial court relied upon a map which contained concentric circles drawn by a compass that marked 200, 300, and 500 feet from applicant's restaurant.

The applicant argues that the proper method for calculating distances is found in the board's regulations, specifically, 40 Pa.Code § 3.23(a)(ii)(b), which states that measurements between two fixed points must be made by a straight line.

However, the trial court did measure the distance between the applicant's restaurant and "Mary's Place" with a straight line. The testimony reveals the following exchange:

THE COURT: He [the witness] says there's another bar and according to the diagram if it's not two hundred feet, it's very close to two hundred feet.

Now it would seem to me that the map would be the best way to measure it.

MR. SOSNOWSKI [the board's attorney]: Your Honor, it seems to me in all fairness to the Liquor Board and the officer who is not here, Your Honor, he goes and does a thorough investigation, I think we have to assume unless there's evidence contrary that somebody measured it, that that bar is not within two hundred feet. It may be 205 feet, but under the Liquor Code if it's not within two hundred feet, it doesn't become part of this objection.

THE COURT: If it's under the map it is within two hundred feet. I'm going to accept the map and not the Liquor Control Board.

MR. DiVITO [the applicant's attorney]: Your Honor, I object to that because the accuracy of those drawings is a question they were done with a compass.

THE COURT: By scale that's on the map.

MR. DiVITO: The circles.

THE COURT: I'm referring to the circle, but what you will have to do is learn the scale and take the ruler.

. . . .

MR. DiVITO: The scale is one inch equals two hundred feet.

THE COURT: Taking the measurement *according to the Liquor Code* is from the nearest point of the proposed premises to the nearest point of the area ...

. . . .

THE COURT: ... [I]f on the map that building is in fact a licensed bar, then that licensed bar is within two hundred feet of this establishment. (emphasis added).

Thus, the court properly measured the distance between the applicant's restaurant and "Mary's Place," and substantial evidence exists supporting the trial court's finding that Mary's Place is within 200 feet of applicant's restaurant.

█ Testimony revealed that "Mary's Place" served alcohol; however, the witnesses did not know if "Mary's Place" was a properly licensed facility. Section 4-404 of the Code states that the board may deny an application if the proposed facility is within 200 feet of a *licensed* facility. The trial court presumed it was a licensed establishment, but there was no evidence on the record to demonstrate this.

Therefore, substantial evidence supports the trial court's finding that "Mary's Place" is within 200 feet of applicant's restaurant. However, the case is remanded to the trial court to determine if "Mary's Place" is a licensed facility.

Accordingly, the decision of the trial court is vacated and the case remanded for a finding as to whether "Mary's

Place" is a licensed facility, and for a new decision in view of that finding.

## ORDER

NOW, January 17, 1992, the order of the Court of Common Pleas of Philadelphia County, No. 8911–3206, dated February 19, 1991, denying applicant's transfer of a liquor license is vacated and the case remanded for a finding as to whether the establishment known as "Mary's Place" is a licensed facility and for a new decision in view of that finding.

Jurisdiction relinquished.