IREM TEMPLE AAONMS, Petitioner

v.

PENNSYLVANIA LIQUOR CONTROL
BOARD, Respondent.

Cataldo Saitta, individually and o/b/o
the members of Irem Temple
AAONMS, Petitioners

v.

Pennsylvania Liquor Control
Board, Respondent.

Irem Temple AAONMS, Cataldo Saitta,
individually and o/b/o the members
of Irem Temple AAONMS

v.

Pennsylvania Liquor Control Board.

In re: Application of Acacia Services,
LLC for Restaurant License
Transfer.

Appeal of: Irem Temple AAONMS.

Irem Temple AAONMS Cataldo Saitta,
individually and o/b/o the members
of Irem Temple AAONMS

v.

Pennsylvania Liquor Control Board.

In re: Application of Acacia Services,
LLC for Restaurant License
Transfer.

Appeal of: Cataldo Saitta, individually
and o/b/o the members of Irem
Temple AAONMS.

Commonwealth Court of Pennsylvania.

Argued Dec. 9, 2013.
Decided March 14, 2014.
Reargument Denied April 29, 2014.

Michael D. Yelen, Wilkes–Barre, for petitioners.

Rodrigo Diaz, Executive Deputy Chief Counsel, Harrisburg, for respondent.

Richard S. Bishop, Kingston, for intervenor Acacia Services, LLC.

BEFORE: LEADBETTER, Judge, and COHN JUBELIRER, Judge and COVEY, Judge.

OPINION BY Judge LEADBETTER.

Irem Temple AAONMS (Ancient Arabic Order, Nobles of the Mystic Shrine) (Irem Temple) and Cataldo Saitta, individually and on behalf of Irem Temple members, have filed five appeals with this Court: (1) two appeals from the February 14, 2013 order of the Pennsylvania Liquor Control Board (Board) approving the application of Acacia Services, LLC (Acacia) for, *inter alia*, an inter-municipal, double transfer of a restaurant liquor license, (2) an appeal from the Board's February 14, 2013 letter notifying Irem Temple of the "de-licensing" of its catering club liquor license for the areas covered by Acacia's approved license transfer, and (3) two appeals from the March 7, 2013 order of the Court of Common Pleas of Luzerne County (trial court) quashing the appeals from the Board's February 14, 2013 order for lack of jurisdiction.

In these consolidated appeals, we are asked to decide (1) whether jurisdiction to hear the appeals from the Board's February 14, 2013 order and notification letter lies in the trial court or in this Court, (2) whether the Board abused its discretion and committed an error of law in approving Acacia's application and de-licensing Irem Temple's liquor license, and (3) whether the Board deprived Irem Temple of due process rights by de-licensing its license without notice and a hearing. After careful review of the record, relevant statutory provisions and case law, we conclude that jurisdiction over the appeals from the Board's order lies in this Court, that the Board's notification of the de-licensing of Irem Temple's license is not a separate adjudication appealable to this Court, and that the Board did not abuse its discretion, commit an error of law or violate Irem Temple's constitutional due process rights. Accordingly, for the reasons set forth below, we affirm the Board's order, dismiss the appeal from the de-licensing of Irem Temple's license, and dismiss as moot the appeals from the trial court's order.

I.

Irem Temple is a male-only fraternal organization with 3200 members. It owns 350 acres of land in Dallas Township, Luzerne County, currently consisting of a golf course, areas for campers and trailers, 23 or 24 cottages, a 305–unit apartment complex and a new clubhouse constructed by Masonic Villages of the R.W. Grand Lodge of F. & A.M. of Pennsylvania (Masonic Villages) in 2009. In 2012, Acacia, a

company wholly owned by Masonic Villages, sought to transfer a restaurant liquor license to the second floor of the new clubhouse. The evidence presented at a hearing reveals the following events leading to the disputes in this matter.

In June 2006, Irem Temple leased to Masonic Villages a portion of its land to allow Masonic Villages to construct apartments and cottages for retirees. In another lease agreement dated November 29, 2007, Irem Temple permitted Masonic Villages to construct a new clubhouse on Irem Temple's land at Masonic Villages' sole cost and to demolish the existing clubhouse built in the 1920s that Irem Temple had operated with a catering club liquor license. The term of the lease was 50 years with an option to extend it for each successive 10–year period.

Under the 2007 lease agreement, Masonic Villages owns all improvements made on the leased land until such time as the lease is terminated. Paragraph 5.1.4 of the 2007 Lease Agreement (Exhibit P–4); Item No. 20 of the Original Record of Administrative Proceedings (O.R.). Masonic Villages had a right to sublease the leased land and improvements thereon and to manage or have a third party manage the operation of the new clubhouse. On November 29, 2007, Masonic Villages subleased to Irem Temple the first floor of the new clubhouse to be built, except the far left side and the foyer area near the stairs and elevator, for a yearly rent of $16 per square foot. Irem Temple intended to use those areas for a shrine, offices and storage. The term of the sublease was 10 years with an option to extend it for each successive 10–year period. Masonic Villages built a new 26,000-square-foot clubhouse located at 64 Ridgway Drive, Dallas

Township at the cost of $8,000,000 and opened it in 2009.

In December 2010, Irem Temple and Masonic Villages entered into a settlement agreement, designating Masonic Villages as the exclusive service provider at the new clubhouse. The agreement stated that they initially contemplated a transfer of Irem Temple's catering club liquor license to Masonic Villages, but that the Board refused to approve their management consulting agreement. The Board subsequently approved a management consulting agreement between Irem Temple and Acacia, which permitted Acacia to serve alcoholic beverages at the new clubhouse as Irem Temple's agent.

In December 2011, Masonic Villages terminated the 2010 settlement agreement, stating that Irem Temple failed to cooperate with transferring the catering club liquor license to Masonic Villages. Irem Temple then notified Masonic Villages and Acacia that female customers could not be served at the clubhouse because Irem Temple is a male-only organization. On March 13, 2012, Masonic Villages subleased to Acacia the second floor of clubhouse and the portion of the first floor that had not been subleased to Irem Temple. Two days later, Irem Temple terminated the management consulting agreement. Acacia has since operated a BYOB (bring your own beer, booze or bottle) restaurant on the second floor of the new clubhouse, which is open to the public.

On April 3, 2012, the Dallas Township Board of Supervisors passed a resolution approving an inter-municipal restaurant liquor license transfer from Kingston, Pennsylvania to the new clubhouse.[1] On April

---

1. The Board may issue a restaurant liquor license without regard to quota restrictions, if the proposed establishment is located within

"[a] municipality in which the issuance of a restaurant or eating place retail dispenser license has been approved by the governing

16, 2012, Acacia filed with the Board an application for a transfer of the location and ownership of a restaurant liquor license from Amore Café, LLC in Kingston to the second floor of the new clubhouse. The proposed establishment consisted of 6 serving areas with a seating capacity of 356, 4 outside serving areas, 3 kitchens and 1 storage area. The main entrance to the proposed establishment would be through the stairway and elevator located off the foyer and lobby on the first floor of the clubhouse, which would be common areas for Acacia and Irem Temple. At that time, Irem Temple's catering club liquor license covered most of the proposed licensed areas. Acacia also sought an amusement permit, a Sunday sales permit and an extended hours food license permit. In addition, Acacia requested approval of an interior-connection between the proposed licensed areas and the areas occupied by Irem Temple.[2]

Irem Temple, its member, Glyn Bessant, and its Chief Rabban,[3] Cataldo Saitta, filed protests to Acacia's application. Bessant and Saitta later filed petitions to intervene in the proceeding. The Board's Bureau of Licensing (Bureau) noted that the proposed licensed establishment would be lo-cated within 200 feet of another licensed establishment, i.e., the areas of the new clubhouse covered by Irem Temple's catering club liquor license. The Bureau scheduled a hearing to determine (1) whether Bessant and Saitta should be permitted to intervene in the Board's proceeding;[4] (2) who had the right to occupy the second floor and the portion of the first floor of the new clubhouse; (3) whether approval of the application would adversely affect the health, welfare, peace and morals of the neighborhood within 500 feet of the proposed establishment; and, (4) whether the request for an interior-connection between the proposed licensed areas and the areas occupied by Irem Temple should be approved.

At a hearing held on November 6, 2012 before a hearing examiner, Irem Temple's Potentate, Keith Murray, testified that Irem Temple had existed as a nonprofit organization for 110 years engaging in substantial charitable endeavors and that residents on Irem Temple's property, who were not affiliated with the Masonic Order, could not use the clubhouse. Bessant and Saitta testified that Irem Temple's ability to generate income from its catering club liquor license would be affected by approv-

---

body of the municipality for the purpose of local economic development." Section 461(b.1)(2)(ii) of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. § 4–461(b.1)(2)(ii).

**2.** Under 40 Pa.Code § 3.52(b), "[l]icensed premises may not have an inside passage or communication to or with any business conducted by the licensee or other persons except as approved by the Board."

**3.** Irem Temple's governing body is referred to as "Divan," and Divan's president and vice president are referred as "Potentate" and "Chief Rabban," respectively. Board's Findings of Fact Nos. 103 and 104.

**4.** A protest may be filed by (1) a licensee whose licensed premises is located within 200 feet of the proposed establishment, (2) a church, hospital, charitable institution, school or public playground located within 300 feet of the proposed establishment and (3) a resident of the neighborhood within a radius of 500 feet of the proposed establishment. 40 Pa.Code § 17.11(a). Only the protestants listed in 40 Pa.Code § 17.11(a) become a party to the Board's proceeding. *Id.* § 17.11(e). Other protestants must file a petition to intervene and demonstrate that they have a direct interest in the application and that a decision contrary to their direct interest will cause them to be aggrieved. *Id.* §§ 17.11(e) and 17.12(a). The Board has discretion to grant or deny a petition to intervene. *Id.* § 17.12(b).

al of Acacia's application. Masonic Villages' chief executive officer and Acacia's president, Joseph Murphy, testified that Masonic Villages had the right to operate the new clubhouse under the 2007 lease agreement and that Masonic Villages served alcoholic beverages at the new clubhouse as Irem Temple's management company until Irem Temple terminated the management consulting agreement in March 2012. At the time of the hearing, three actions filed by Item Temple and Masonic Villages disputing each other's right to occupy the clubhouse were pending in the trial court. The hearing examiner recommended that the Board approve Acacia's application.

By order dated February 14, 2013, the Board denied the petitions of Bessant and Saitta to intervene in the proceeding, concluding that they failed to establish that they would be directly aggrieved by a grant of the application. The Board noted that it had discretion to grant or deny the application under Section 404 of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. § 4–404, which provides in relevant part:

> [I]n the case of any new license or the transfer of any license to a new location or the extension of an existing license to cover an additional area the board may, *in its discretion,* grant or refuse such new license, transfer or extension *if such place proposed to be licensed is within three hundred feet of any church, hospital, charitable institution, school, or public playground, or if such new license, transfer or extension is applied for a place which is within two hundred feet of any other premises which is licensed by the board* [.] ... [T]he board *shall refuse* any application for a new license, the transfer of any license to a new location or the extension of an existing license to cover an additional area *if, in the board's opinion, such new license,*
>
> *transfer or extension would be detrimental to the welfare, health, peace and morals of the inhabitants of the neighborhood within a radius of five hundred feet of the place proposed to be licensed* .... [Emphasis added.]

The Board found no "restrictive institutions," such as a charitable institution, within 300 feet of the proposed establishment. Board's Finding of Fact No. 49. The Board further found that approval of the application would not adversely affect the health, welfare, peace and morals of the neighborhood within 500 feet of the proposed establishment. The Board approved the transfer application and the request for an interior-connection.

In a letter dated February 14, 2013, the director of the Board's Office of Regulatory Affairs notified Irem Temple that due to the approval of Acacia's application, the entire second floor of the clubhouse and the 20' × 6' and 23' × 23' common foyer and lobby area on the first floor previously covered by Irem Temple's catering club liquor license had been "delicensed" and that the request for an interior-connection had been approved.

Irem Temple appealed the Board's order to the trial court. Saitta, individually and on behalf of Irem Temple members, separately appealed the Board's order to the trial court. He did not challenge the Board's denial of his petition to intervene. Upon Acacia's motion, Judge David W. Lupas quashed the appeals for lack of jurisdiction on March 7, 2013. He concluded that Irem Temple and Saitta lacked standing to appeal the Board's order under Section 464 of the Liquor Code, 47 P.S. § 4–464, which provides in pertinent part:

> *Any applicant* who has appeared at any hearing, ... who is aggrieved by the refusal of the board to issue any such license or to renew or transfer any such

license or to issue or renew any amusement permit may appeal, or *any church, hospital, charitable institution, school or public playground located within three hundred feet of the premises applied for, aggrieved by the action of the board in granting the issuance of any such license or the transfer of any such license, may take an appeal* limited to the question of such grievance, within twenty days from date of refusal or grant, *to the court of common pleas of the county in which the premises or permit applied for is located* .... *The court shall hear the application de novo on questions of fact, administrative discretion and such other matters as are involved* .... The court shall either sustain or over-rule the action of the board and either order or deny the issuance of a new license or the renewal or transfer of the license or the renewal of an amusement permit to the applicant. [Emphasis added.]

Judge Lupas determined that Irem Temple was not a charitable institution under Section 464 of the Liquor Code and that jurisdiction to review the Board's order lies in the Commonwealth Court.

Irem Temple appealed the trial court's March 7, 2013 order to this Court (410 C.D. 2013). On the same day, Saitta, individually and on behalf of Irem Temple members, also appealed the trial court's order (411 C.D. 2013). They filed three more appeals with this Court: (1) Irem Temple's appeal from the Board's February 14, 2013 letter notifying Irem Temple of the de-licensing of the areas previously covered by its catering club liquor license and now licensed to Acacia (382 C.D. 2013), (2) Irem Temple's appeal from the Board's

February 14, 2013 order approving Acacia's application (383 C.D. 2013) and (3) an appeal of Saitta, individually and on behalf of Irem Temple members, from the Board's February 14, 2013 order approving Acacia's application (384 C.D. 2013). This Court initially consolidated the appeals filed in 382, 383 and 384 C.D. 2013 and later consolidated the appeals filed in 410 and 411 C.D. 2013. The Court subsequently granted in part the Board's application to consolidate all of the appeals, including the appeal filed in 1116 C.D. 2013,[5] and consolidated the appeals filed in 382, 383, 384, 410 and 411 C.D. 2013 and stayed the appeal filed in 1116 C.D. 2013.

## II.

Represented by same counsel, Irem Temple and Saitta argue that Irem Temple had standing to appeal the Board's order to the trial court for a *de novo* review as "a charitable institution" within 300 feet of Acacia's establishment and as the holder of the catering club liquor license within 200 feet of the Acacia's establishment. They further argue that they had standing to appeal the Board's order to the trial court as "inhabitants" within 500 feet of Acacia's establishment.

Section 933(a)(1)(v) of the Judicial Code, *as amended,* 42 Pa.C.S. § 933, grants each court of common pleas exclusive jurisdiction to hear appeals from, *inter alia,* "[d]eterminations of the Pennsylvania Liquor Control Board *appealable under ... the Liquor Code* ...." (Emphasis added.) The Commonwealth Court lacks jurisdiction over "such classes of appeals from the exclusive jurisdiction of the courts of common pleas." Section 763(c)(2) of the Judi-

---

5. Irem Temple filed with the trial court a separate appeal from the Board's February 14, 2013 notification of the de-licensing of its catering club liquor license. Judge Michael

T. Vough dismissed the appeal for lack of jurisdiction. Irem Temple appealed that order to this Court, which is docketed at 1116 C.D. 2013.

cial Code, *as amended,* 42 Pa.C.S. § 763(c)(2).

■ Section 464 of the Liquor Code grants standing to appeal the Board's order to a court of common pleas for a *de novo* review[6] only to (1) "any applicant" aggrieved by the Board's refusal to, *inter alia,* approve a liquor license transfer and (2) a church, hospital, "charitable institution," school or public playground located within 300 feet of the proposed establishment and aggrieved by the Board's approval of, *inter alia,* a liquor license transfer. The core concept of standing is that a person who is not adversely affected in any way by the matters he or she seeks to challenge is not aggrieved thereby and, therefore, may not obtain a judicial resolution of the challenge. *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 192, 346 A.2d 269, 280 (1975); *Hous. Auth. of Pittsburgh v. Van Osdol,* 40 A.3d 209, 214 (Pa.Cmwlth.2012). Generally, standing is a non-jurisdictional and waivable issue. *In re Condemnation by Urban Redev. Auth. of Pittsburgh,* 590 Pa. 431, 437, 913 A.2d 178, 181 (2006). Where a statute creates a cause of action and designates who may bring an action, however, "the issue of standing becomes interwoven with that of subject matter jurisdiction" and "becomes a jurisdictional prerequisite to an action." *In re G.D.,* 61 A.3d 1031, 1037 (Pa.Super.2013).

■ The term "charitable institution" is not defined in the Liquor Code. According to Black's Law Dictionary 249 (8th ed. 2004), a "charitable purpose" means "[t]he purpose for which an organization must be formed so that it qualifies as a charitable organization under the Internal Revenue Code." A "charitable organization" is "[a] tax-exempt organization that ... is organized and operated exclusively for religious, scientific, literary, educational, athletic, public-safety, or community-service purposes." *Id.* [citing Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3) ]. In determining whether an organization constitutes a charitable institution under the Liquor Code, "evidence as to the actual 'origin, organization, function, objects and methods of operation' ... must be examined." *Pa. Liquor Control Bd. v. Estate of McBride,* 57 Pa.Cmwlth. 79, 426 A.2d 1191, 1193 (1981) [quoting *Subers Liquor License Case,* 173 Pa.Super. 558, 98 A.2d 639, 640 (1953) ].

■■ Masonic Villages' witness, Murphy, testified that in the 2007 lease agreement, Irem Temple and Masonic Villages decided that Masonic Villages would own the new clubhouse because Irem Temple is "not a charity" and "would have to pay sales tax," and that Irem Temple would purchase the new clubhouse "for the undepreciated value of the asset" upon the termination of the agreement. Notes of Testimony (N.T.) at 192 and 193; Reproduced Record (R.R.) at 197a and 198a. Characterizing Irem Temple as "a fraternal organization," Irem Temple's witness, Murray, testified only that it had been involved in "charitable endeavors." *Id.* at 58–59; R.R. at 63a–64a. Irem Temple presented no evidence to establish that Irem Temple is a tax-exempt organization operating exclusively for the purposes enumerated in Section 501(c)(3) of the Inter-

---

6. A *de novo* review "contemplates an independent evaluation of the evidence, which has already been presented." *Two Sophia's Inc. v. Pa. Liquor Control Bd.,* 799 A.2d 917, 922 n. 5 (Pa.Cmwlth.2002). In conducting a *de novo* review, however, the trial court is not restricted to reviewing the established record and may hear new evidence and make independent findings of fact and conclusions of law. *Pa. State Police, Bureau of Liquor Control Enforcement v. Cantina Gloria's Lounge, Inc.,* 536 Pa. 254, 265, 639 A.2d 14, 19 (1994); *Two Sophia's,* 799 A.2d at 922 n. 6.

nal Revenue Code. Because Irem Temple is neither a license transfer applicant nor a charitable institution, it lacked standing to appeal the Board's order to the trial court under Section 464 of the Liquor Code. The trial court correctly determined that it lacked jurisdiction to review the Board's decision.[7]

■ Irem Temple and Saitta nonetheless insist that the trial court had jurisdiction to hear the appeals under *Application of Gismondi*, 199 Pa.Super. 619, 186 A.2d 448, 451 (1962), which held that the individuals who resided within 500 feet of the proposed establishment and protested the application for a new liquor license "became parties aggrieved by an adverse decision of the Board" and should be allowed to appeal to the court of common pleas. In support, the Superior Court relied on Section 404 of the Liquor Code, which requires the Board to deny an application if a new license would be "detrimental to the welfare, health, peace and morals of the *inhabitants* of the neighborhood" within 500 feet of the place proposed to be licensed. (Emphasis added.) In *Fisher v. Pennsylvania Liquor Control Board*, 93 Pa.Cmwlth. 63, 500 A.2d 218, 219 (1985), this Court stated that an *inhabitant* who protested the application and resided within 500 feet of the proposed establishment was entitled to appeal the Board's grant of a liquor license to the trial court.

■ Those cases finding standing of an "inhabitant" within 500 feet of the proposed establishment to appeal the Board's decision to the trial court are inapplicable to Irem Temple and Saitta. An "inhabitant" is not defined in the Liquor Code. The word "inhabit" means "[t]o dwell in; to occupy permanently or habitually as a resi-

dence." Black's Law Dictionary 798 (8th ed. 2004). The Webster's Third New International Dictionary 1163 (2002) similarly defines the word "inhabit" as "to occupy as a place of settled residence or habitat," and an "inhabitant" as "a person who dwells or resides permanently in a place." Under its common and approved usage, therefore, an "inhabitant" is *an individual resident*, not an organization such as Irem Temple. Irem Temple cannot establish standing to appeal to the trial court "simply by claiming that it has individual members who live within five hundred feet of the proposed licensed premises." *Tacony Civic Ass'n v. Pa. Liquor Control Bd.*, 668 A.2d 584, 588 (Pa.Cmwlth.1995). It is undisputed that Saitta resides in Exeter, Pennsylvania and does not maintain a residence within 500 feet of the clubhouse. Accordingly, neither Irem Temple nor Saitta can claim standing to appeal the Board's decision to the trial court as inhabitants within 500 feet of Acacia's proposed establishment.

■ Nor did Irem Temple's status as the licensee within 200 feet of Acacia's establishment confer standing to appeal the Board's decision to the trial court on the basis that Section 404 of the Liquor Code grants the Board discretion to grant or deny a license transfer where a proposed establishment is within 200 feet of another licensed establishment. In *West Reading Tavern, Inc. v. Pennsylvania Liquor Control Board*, 710 A.2d 648 (Pa. Cmwlth.1998), a bistro applied for a new restaurant liquor license. A tavern with a restaurant liquor license, located 60 feet from the bistro, protested the application and appealed the Board's grant of the application to the trial court. We held

---

7. The proper course for the trial court upon determining that this Court has jurisdiction would have been to transfer the appeals to this Court, rather than dismissing the appeals, pursuant to Section 5103(a) of the Judicial Code, *as amended*, 42 Pa.C.S. § 5103(a). *Ballroom, LLC v. Commonwealth*, 984 A.2d 582, 586 n. 4 (Pa.Cmwlth.2009).

that the tavern lacked standing to appeal the Board's decision to the trial court under Section 464 of the Liquor Code and that the trial court properly transferred the appeal to this Court. Hence, Irem Temple cannot rely on its location within 200 feet of Acacia's premises to establish standing to appeal the Board's decision to the court of common pleas.

Although Irem Temple lacked standing under the Liquor Code, it nonetheless has a right to appeal the Board's order directly to this Court pursuant to Section 702 of the Administrative Agency Law, 2 Pa.C.S. § 702, which provides that "[a]ny person aggrieved by an adjudication of a Commonwealth agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure)."[8] *Maritime Mgmt. Inc. v. Pa. Liquor Control Bd.*, 531 Pa. 95, 99, 611 A.2d 202, 204 (1992); *Application of El Rancho Grande, Inc.*, 496 Pa. 496, 507–8, 437 A.2d 1150, 1155–56 (1981); *W. Reading Tavern*, 710 A.2d at 650–51. A right to appeal under the Administrative Agency Law is in addition to that provided by the Liquor Code. *Maritime Mgmt.*, 531 Pa. at 99, 611 A.2d at 204; *Application of Family Style Rest., Inc.*, 503 Pa. 109, 113, 468 A.2d 1088, 1090 (1983). Section 5105(a)(2) of the Judicial Code, *as amended*, 42 Pa.C.S. § 5105(a)(2), provides that "[t]here is a right to appeal ... from the final order ... of every ... [g]overnment unit ... to the court having jurisdiction of such appeals ... notwithstanding the fact that it is not appealable under Chapter 7 of Title 2 [Administrative Agency Law]."

The catering club license held by Irem Temple included the areas sought to be licensed in Acacia's application. Irem Temple protested Acacia's application and presented evidence at the hearing in opposition to the application. Thus, Irem Temple unquestionably had a direct interest in the Board's adjudication and was aggrieved by the approval of Acacia's application.[9] Therefore, Irem Temple had a right to appeal the Board's order directly to this Court pursuant to Section 702 of the Administrative Agency Law, subject to our appellate review.[10] As noted in foot-

---

**8.** The provisions of the Administrative Agency Law do not apply to "[a]ny appeal from a Commonwealth agency which may be taken initially to the courts of common pleas under 42 Pa.C.S. § 933." Section 701(b)(2) of the Administrative Agency Law, 2 Pa.C.S. § 701(b)(2).

**9.** Neither the Board nor Acacia questions Saitta's right to file a direct appeal to this Court pursuant to Section 702 of the Administrative Agency Law. Accordingly, we will not address Saitta's right to do so. We are compelled to note, however, that Irem Temple and Saitta present the same arguments through the same attorney and that the interests of Saitta and other Irem Temple members, therefore, appear to be adequately represented by Irem Temple.

**10.** Irem Temple's reliance on *In re B.J.R. Mace., Inc.*, 30 Pa.Cmwlth. 253, 373 A.2d 768 (1977), is inapposite. In that case, this Court quashed the direct appeal from the Board's decision approving a transfer of the appellant's surrendered license and remanded the matter to the trial court to consider the merits of the appeal. Section 702 of the Administrative Law subsequently enacted in 1978, however, expressly permits a direct appeal from the Board's decision to this Court. In *El Rancho Grande*, the Supreme Court vacated this Court's order affirming the trial court's order quashing an appeal from the Board's order for lack of standing and remanded *to this Court* to consider the merits of the appeal. *See also Maritime Mgmt.* (the Supreme Court reversed this Court's order quashing the appeal from the Board's order under Section 408(b) of the Liquor Code, 47 P.S. § 4-408(b), providing that "there shall be no appeal from [the Board's] decision," and remanded *to this Court* to consider the merits of the appeal).

note 7 above, the court of common pleas should have transferred this appeal to our Court rather than dismiss it. However, the merits at issue have been fully briefed and argued here. Therefore, rather than reversing and remanding for such a transfer, in the interests of judicial economy, we will assume jurisdiction over this appeal as though it had come to us directly from the Board.

### III.

 Irem Temple and Saitta next argue that the Board abused its discretion in approving Acacia's application, while the right to occupy and manage the clubhouse was being litigated in the trial court. They claim that the Board ignored the lease agreement permitting Masonic Villages to operate the clubhouse only under Irem Temple's catering club liquor license for the benefit of Irem Temple and Masonic Villages' residents, not to operate a public restaurant. They cite *In re Royal,* 190 Pa.Super. 643, 155 A.2d 234, 236 (1959), which held that the Board "can lawfully refuse to issue a restaurant liquor license where there is a restriction, in the deed to the property, which prohibits its use for that purpose." [11]

 The Liquor Code is "deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth." Section 104 of the Liquor Code, 47 P.S. § 1–104. Because the Liquor Code is remedial legislation, its provisions must be liberally construed to accomplish its purpose. *Id.; Hyland Enters., Inc. v. Pa. Liquor Control*

*Bd.,* 158 Pa.Cmwlth. 283, 631 A.2d 789, 792 (1993).

In *Appeal of Pittaulis,* 444 Pa. 243, 282 A.2d 388 (1971), our Supreme Court considered whether the Board could properly deny a liquor license transfer application based on a restriction in the lease prohibiting the sale of alcohol beverages on the premises. The Court concluded that the Board had no discretion to refuse the transfer on the ground that the lessor may have a contractual right to withhold permission to serve alcohol on the premises. The Court reasoned:

> The Liquor Control Board was designed and established to regulate the sale of liquor throughout the Commonwealth, not to adjudicate collateral issues involving rights and interests in real property. Indeed, the members of the Board are not even necessarily trained in the law. A court of law or equity rather than licensing proceedings before an administrative tribunal is the proper forum for resolving such issues involving competing claims to real property.

*Id.* at 249, 282 A.2d at 390 (footnote omitted). Subsequently in *Pennsylvania Liquor Control Board v. Court House Motor Inn, Inc.,* 13 Pa.Cmwlth. 164, 318 A.2d 383 (1974), this Court followed *Pittaulis* and rejected the Superior Court's previous decisions, including *In re Royal* cited by Irem Temple, which allowed the Board to refuse to issue a liquor license based on a deed restriction prohibiting a use of property to sell liquor. We stated that "the enforcement of sometimes ancient restrictions on the use of land by an administrative agency without express statutory authority ... is anomalous" and that the

---

11. Based on the issues raised here, the scope of our review of the Board's order is limited to determining whether the Board's adjudication is not in accordance with law, whether the Board abused its discretion, or whether

constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704; *Malt Beverages Distribs. Ass'n v. Pa. Liquor Control Bd.,* 607 Pa. 560, 571, 8 A.3d 885, 892 (2010).

Board's issuance of a license to a premises with a deed restriction "in no way impairs the rights of persons who might be entitled and disposed to enforce the restriction." *Court House Motor Inn*, 318 A.2d at 385. *See also Tacony Civic Ass'n*, 668 A.2d at 586 n. 2 (stating that "a deed restriction against the sale of intoxicating drink is not a proper ground[ ] for refusal of a license ... and, therefore, is not relevant" in the Board's proceeding). Hence, the dispute over the alleged restrictions in the 2007 lease agreement on serving alcohol at the clubhouse and the right to occupy and manage the clubhouse under that lease agreement (currently being litigated in the unrelated pending actions) were irrelevant to the Board's decision on Acacia's transfer application.[12]

Section 404 of the Liquor Code grants the Board discretion to grant or deny a license transfer application where, as here, a proposed establishment is located within 200 feet of another licensed establishment. *Chadds Ford Tavern, Inc. v. Pa. Liquor Control Bd.*, 736 A.2d 70, 73 (Pa.Cmwlth.1999). We may not substitute our discretion for that of the Board; we may only determine whether the Board clearly abused its discretion. *Appeal of Irene's Café, Inc.*, 44 Pa.Cmwlth. 20, 404 A.2d 707, 709 (1979). Further, a liquor license transfer is not ordinarily detrimental to the welfare, health, peace and morals of the inhabitants of the neighborhood; it is detrimental to a community "only in cases where the nature of the neighborhood and the nature of the place to be licensed are such that the issuance would be detrimental." *K & K Enters., Inc. v. Pa. Liquor Control Bd.*, 145 Pa.Cmwlth. 118, 602 A.2d 476, 480 (1992). Finally, a license transfer application may not be denied based on testimony expressing concerns or potential harm from a grant of the application. *Tacony Civic Ass'n*, 668 A.2d at 589.

Here, the Board found "no compelling reason" to deny Acacia's application. Board's Opinion at 41. The evidence established that the neighborhood within 500 feet of the clubhouse is 25% residential and 75% golf course which is open to the public one day a week. When Acacia applied for a restaurant liquor license transfer, Irem Temple was "not operating its licensed establishment on the second floor of the clubhouse because [Acacia was] operating a BYOB restaurant at that location." Board's Opinion at 40. The Board was not convinced that the testimony of Irem Temple's witnesses expressing their perceived or potential problems from a grant of the application warranted denial of the application. Indeed, it is quite apparent that the dispute between these parties centers around property rights and not whether liquor should be sold on the

---

**12.** If it is ultimately determined in the pending actions that Acacia has no right to occupy the areas of the clubhouse sought to be licensed, it will have to return the restaurant liquor license to the Board for safekeeping pursuant to 40 Pa.Code § 7.31, which provides:

(a) A licensee whose licensed establishment is not in operation for 15–consecutive days shall return his license and, if a liquor license, his Wholesale Purchase Permit Cards, to the Board not later than the expiration of the 15–day period. The return of the license and card will not invalidate the license, which will be held in safekeeping for the benefit of the licensee and be available for his use when operations are resumed at the licensed premises, or for transfer.

(b) If the license is returned because the licensee no longer has a lease for the licensed premises, or removes therefrom, or is dispossessed by legal process, *the license will be invalidated as to the premises for which issued but will not be invalidated generally nor cancelled, and will be held in safekeeping for the benefit of the licensee for transfer only.* [Emphasis added.]

premises. We conclude that the Board did not abuse its discretion in approving Acacia's application.

## IV.

■ Irem Temple and Saitta further argue that the Board committed an error of law in de-licensing Irem Temple's catering club liquor license for the overlapping areas. They point to the references in Section 403(a) of the Liquor Code, 47 P.S. § 4–403(a) (liquor license applications), and 40 Pa.Code § 17.11 (application protests) to a "premises not then licensed" to assert that the Board had no authority to approve the transfer of the restaurant liquor license to the second floor of the clubhouse because that area was already covered by Irem Temple's catering club liquor license. They submit that although the Board may extend, renew, suspend or revoke a liquor license pursuant to Section 404 and Sections 470 and 471 of the Liquor Code, 47 P.S. §§ 4–470 and 4–471, it could not "de-license" the areas served by an existing license. They further claim that the Board deprived Irem Temple of its due process rights by de-licensing the catering club license without notice and a hearing. What this argument ignores is that at the time of the application Irem Temple was not in possession or control of the premises, so it could not operate its liquor license there.

■ The Board's interpretation of the Liquor Code and the regulations is given deference unless it is clearly erroneous. *Pa. Liquor Control Bd. v. Richard E. Craft Am. Legion Home Corp.*, 553 Pa. 99, 103, 718 A.2d 276, 278 (1998). We read the language, a "premises not then licensed," in Section 403(a) of the Liquor Code and 40 Pa.Code § 17.11 as merely signifying that one establishment cannot be served by two different liquor licenses issued by the Board. The Board's decision to approve the requested restaurant license transfer and then de-license Irem Temple's catering club license for the overlapping area is not inconsistent with Section 403(a) of the Liquor Code and 40 Pa.Code § 17.11.

■ We also note that the de-licensing of Irem Temple's license was not an adjudication separately appealable to this Court. A letter or e-mail can constitute an adjudication requiring notice and a hearing only if it (1) is an agency's final order, decree, decision, determination or ruling and (2) impacts on a party's personal or property rights, privileges, immunities, duties, liabilities or obligations. *NHS Human Servs. of PA v. Dep't of Pub. Welfare*, 985 A.2d 992, 995 (Pa.Cmwlth. 2009). Here, the de-licensing of Irem Temple's license for the overlapping areas was merely the consequence of the approval of Acacia's transfer application. The two actions of the Board were "so inextricably intertwined" that they cannot be treated and reviewed as two separate adjudications. *Player's Bench, Inc. v. Pa. Liquor Control Bd.*, 751 A.2d 1221, 1223 (Pa. Cmwlth.2000).

■ We further find meritless Irem Temple's claim that the de-licensing of its license without notice and a hearing violated its constitutional rights to due process. Irem Temple was well aware that Acacia was seeking to transfer a restaurant license to the second floor of the clubhouse. In its protest to Acacia's application, Irem Temple stated that its license "currently covers the exact same area to which Acacia seeks to transfer the license" and that Acacia had no right to occupy the clubhouse. May 11, 2012 Letter of Irem Temple's counsel; O.R., Item No. 5. Irem Temple presented the testimony and the documentary evidence to defend its license at the hearing. Because Irem Temple had

notice of possible de-licensing of its license and fully litigated the issue at the hearing, its due process violation claim must be rejected.

In conclusion, this Court, not the trial court, has jurisdiction to hear the appeals from the Board's February 14, 2013 order. The Board's February 14, 2013 notification of the de-licensing of Item Temple's license is not a separate adjudication appealable to this Court. The Board did not err in approving Acacia's application and de-licensing Irem Temple's license. The appeals from the trial court's March 7, 2013 order are moot because in the direct appeals from the Board's order, we have disposed of the same issues raised before the trial court. Accordingly, we affirm the Board's order, dismiss the appeal from the de-licensing of Irem Temple's license, and dismiss the appeals from the trial court's order as moot.

### ORDER

AND NOW, this 14th day of March, 2014, the February 14, 2013 order of the Pennsylvania Liquor Control Board appealed by Irem Temple AAONMS and Cataldo Saitta in 383 and 384 C.D. 2013 are AFFIRMED. The appeal filed by Irem Temple AAONMS in 382 C.D. 2013 and the appeals filed by Irem Temple AAONMS and Cataldo Saitta in 410 and 411 C.D. 2013 are DISMISSED.