# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Domusimplicis, LLC | : | |
| | : | |
| v. | : | No. 1930 C.D. 2017 |
| | : | Argued: November 13, 2018 |
| Pennsylvania Liquor Control Board, | : | |
| Appellant | : | |

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge[1]

**OPINION**
**BY JUDGE SIMPSON**                          **FILED: January 14, 2019**

Before us is the appeal filed by the Pennsylvania Liquor Control Board (PLCB) to the order of the Court of Common Pleas of Chester County (trial court),[2] reversing the decision of the PLCB denying an Economic Development (ED) Restaurant Liquor License (ED License) to Domusimplicis, LLC (Licensee) for its restaurant in West Chester Borough (Borough). The PLCB argues issuance of the ED License violates the county quota scheme under Section 461(b.1) of the Liquor Code,[3] 47 P.S. §4-461(b.1), because Licensee did not satisfy criteria for the ED exception set forth in its regulations. The PLCB also asserts the trial court erred in failing to defer to its narrow interpretation of the regulatory criteria. Upon review, we affirm.

## I. Background

Licensee applied for an ED License for its restaurant iPasta, located at 134 E. Gay Street in the Borough in Chester County (Premises). iPasta is a fine-

---

[1] This case was decided before Senior Judge Pellegrini's service on the court ended on December 31, 2018.

[2] The Honorable Ronald C. Nagle, Senior Judge, presided.

[3] Act of April 12, 1951, P.L. 90, as amended, 47 P.S. §§1-101–10-1001. Section 461(b.1) of the Liquor Code was added by Section 9 of the Act of December 20, 2000, P.L. 992.

dining restaurant seating 34 patrons serving home-cooked Italian cuisine in a principally commercial area. Licensee sought an ED License to increase its income and to add economic benefit to the community with increased clientele.

Following a notice and public hearing, the Borough Council adopted Resolution 12-2015 conditionally approving[4] Licensee's application for an ED License. Reproduced Record (R.R.) at 142a-44a. Resolution 12-2015 evinced Council's conclusion that its approval would promote economic development in the Borough by "provid[ing] employment and attract[ing] customers and patrons to other restaurants in the Borough." Id. at 143a. Having satisfied the municipal approval prerequisite for an ED license under 40 Pa. Code §3.101(a)(3), Licensee filed its application with the PLCB on November 2, 2015, and paid the licensing fees.

Initially, the PLCB raised 10 objections to the application.[5] Pursuant to Section 464 of the Liquor Code,[6] 47 P.S. §4-464, the PLCB's Bureau of Licensing ordered a hearing on the objections.

---

[4] The conditions were: no carry-out beer; close by midnight; at least one Responsible Alcohol Management Program certified employee; and availability of food for sale while serving alcohol.

[5] The 10 objections are summarized as follows:

1) Premises is located within 200 feet of other licensees.
2) Exhaustion of reasonable means to find a suitable license in the quota scheme.
3) Question as to applicant's financial responsibility.
4) Failure to provide source of funds.
5) Failure to submit financial disclosure affidavit.
6) Failure to provide composition of property owner.
7) Failure to submit application addendum.
8) Failure to submit photographs of proposed members and manager.
9) Failure to submit interior/exterior photographs of Premises.
10) Question as to adverse effect on neighborhood.

[6] Act of April 12, 1951, P.L. 90, as amended, 47 P.S. §§1-101–10-1001.

The PLCB hearing examiner conducted two hearings. The second hearing was necessary because the PLCB added an objection to the application as to whether Licensee exhausted reasonable means to find a suitable license "in accordance with Section 3.105 of the [PLCB's] regulations." Hr'g Tr., 9/29/16, Ex. B-8. Counsel for Licensee, a liquor license attorney who served as Licensee's agent in attempting to procure a license (Agent), testified at both hearings. iPasta's owner (Owner), for whom English is a second language, also testified at both hearings. The hearing examiner recommended issuing the ED License. Nonetheless, the PLCB refused the application and denied the ED License.

On June 23, 2017, the PLCB issued an opinion supporting its denial. The PLCB noted that half of the objections raised were moot because Licensee submitted the requisite information. Bd. Op., 6/23/17, at 16. Specifically, it noted Licensee submitted the requisite information as to financial resources and disclosures, owner composition and the addendum to the license application.

Based on the remaining objections, the PLCB denied the ED License. It emphasized that five other licensed establishments are located within 200 feet of the Premises, and that Licensee failed to exhaust reasonable means to find a suitable license within the quota scheme as required by 40 Pa. Code §3.105. The PLCB also concluded the approval of the ED License would adversely affect the community.

The trial court accepted the record of the administrative proceedings, and it conducted a *de novo* trial where Owner and Agent testified on July 11, 2017. Notably, Agent did not represent Licensee during the *de novo* trial.

Agent described his efforts to secure a restaurant license. He testified regarding his attempts to discern whether any non-active licenses were available for purchase, and whether licenses placed on the safekeeping and storage lists were available. Agent explained his familiarity with the process of obtaining a liquor license and his placement of other Borough licenses in safekeeping, which were not for sale. He testified about his contacts with licensees by telephone and letter inquiring as to the availability of a license. He contacted approximately 170 out of 192 licensees by letter or telephone, or both. He acknowledged he did not extend any offers to purchase a license on Licensee's behalf. He also testified as to the costs of obtaining a non-ED license, that ranged from $375,000 (outside the Borough) to about $500,000 in the Borough. Tr. Ct., Slip Op., 11/16/17, Finding of Fact (F.F.) No. 7. He explained the Borough was not allowing transfers of restaurant "R" licenses from outside the Borough given the large number of currently licensed restaurants and bars.

Owner testified the costs of non-ED licenses rendered that option infeasible. He also testified as to the financial benefit for iPasta and the community.

Ultimately, the trial court sustained Licensee's appeal, directing issuance of the ED License. The trial court found Licensee submitted the requisite photographs to the PLCB three times. Thus, it discerned no merit in the PLCB's objections based on their non-submission. The trial court also found there was no evidence supporting the PLCB's conclusion that issuing the ED License would adversely affect the community. As to the two remaining objections (location within 200 feet of other licensees, and failure to exhaust reasonable means to find a license under the quota scheme), the trial court found Licensee met the criteria for an ED License. The trial

4

court credited Agent's testimony about his efforts to find an available license. It found "financial inability" motivated Licensee's efforts to procure an ED License. F.F. No. 8. Issuing the license would increase iPasta's income, allow employment expansion, and benefit the community with increased clientele. F.F. No. 14.

The PLCB appealed the trial court's order to this Court. In its Pa. R.A.P. 1925(a) opinion, the trial court noted the PLCB assigned three errors: (1) an error of law or abuse of discretion that Licensee exhausted reasonable means to acquire a license within the county quota scheme; (2) an error in requiring the PLCB to show that granting the license adversely affects the neighborhood; and (3) an error of law in not deferring to its narrow interpretation of the ED exception as "limited to those areas suffering economic hardship." Certified Record (C.R.), Item No. 16. As to the third issue, the trial court advised that the PLCB opinion did not refer to an economic hardship criterion, and that no argument was raised during the hearing or in post-trial briefs placing such a limitation on the ED exception, resulting in waiver.

After briefing and argument, this matter is ready for disposition.

## II. Discussion

On appeal,[7] the PLCB argues that the trial court erred in determining Licensee exhausted reasonable means of finding a suitable license within the quota scheme. It also asserts the trial court erred by requiring the PLCB to prove that the

---

[7] Where a trial court heard a liquor license matter *de novo*, our review is limited to determining whether there is substantial evidence to support the trial court's findings or whether the trial court committed an error of law or abused its discretion. K & K Enters., Inc. v. Pa. Liquor Control Bd., 602 A.2d 476 (Pa. Cmwlth. 1992).

5

granting of a license adversely affected the neighborhood when it refused the license based on proximity to other licensees. In addition, the PLCB contended the trial court owed deference to its interpretation of the ED exception as limited "to those areas suffering economic hardship." Appellant's Br. at 4.

Licensee responds that the trial court's findings are supported by substantial evidence. It argues the trial court did not abuse its discretion when it determined Licensee met the criteria for an ED License, including showing an exhaustion of reasonable efforts to obtain a non-ED license. It emphasizes that the trial court did not err in applying the ED criteria because the PLCB did not raise the issue of economic hardship before filing its Rule 1925(b) Statement, resulting in waiver.

### A. Legal Framework

Section 461(a) of the Liquor Code, 47 P.S. §4-461(a), restricts the number of permitted licenses based on a municipality's population. The quota of licenses in Chester County is 166; the County exceeds its license quota in that there are 192 restaurant liquor licenses and 9 malt beverage licenses that count against this quota.

However, relevant here, Section 461(b.1) of the Liquor Code allows an exception to the quota for restaurants, in the interest of economic development.[8] This is conditioned upon an applicant showing that it exhausted reasonable means for obtaining a suitable license in the county in which the municipality is located.

---

[8] An economic development license is not transferable to another licensee.

6

Pursuant to Section 464 of the Liquor Code, 47 P.S. §4-464, a trial court conducts *de novo* review. Becker's Café, Inc. v. Pa. Liquor Control Bd., 67 A.3d 885 (Pa. Cmwlth. 2013). As such, it may "'sustain or over-rule the action of the [PLCB] and either order or deny the issuance of a new license ....'" Id. at 894 (citation omitted). "A *de novo* review 'contemplates an independent evaluation of the evidence.'" Irem Temple AAONMS v. Pa. Liquor Control Bd., 87 A.3d 983, 996 n.6 (Pa. Cmwlth. 2014) (citations omitted). "In conducting a *de novo* review, however, the trial court is not restricted to reviewing the established record and may hear new evidence and make independent findings of fact and conclusions of law." Id.

Regardless of whether substantial evidence supports the PLCB's findings, the trial court may reverse a PLCB decision to deny a license provided its own findings are supported by substantial evidence in the record as a whole. I.B.P.O.E. of W. Mount Vernon Lodge 151 v. Pa. Liquor Control Bd., 969 A.2d 642 (Pa. Cmwlth. 2009). Indeed, in exercising its statutory discretion, the trial court may reverse the PLCB based on identical findings and even when the evidence it hears is substantially the same as the evidence presented to the PLCB. Pa. Liquor Control Bd. v. Craft Am. Home, 718 A.2d 276 (Pa. 1998).

**B. Objections**

The PLCB raised three substantive objections to issuance of the ED License on appeal: (1) location of the Premises within 200 feet of other licensees; (2) failure to show reasonable efforts to obtain a license within the quota scheme; and (3) adverse effects on the neighborhood.

7

## 1. 200-foot Proximity

There is no dispute that the Premises are located within 200 feet of five other licensees. Section 404 of the Liquor Code gives the PLCB the discretion to refuse a new license application for an establishment that is within 200 feet of any other licensed premises. However, and relevant here, an application is not automatically disqualified based on its proximity to other licensees. Chadds Ford Tavern, Inc. v. Pa. Liquor Control Bd., 736 A.2d 70 (Pa. Cmwlth. 1999) (granting license despite location within 200 feet of other licensees). It is a matter of discretion.

Notably, the PLCB does not explain how the trial court abused its discretion when it issued the ED License here. Accordingly, this Court discerns no abuse of discretion by the trial court in refusing to deny the ED License based on its proximity to other licensees.

## 2. Exhaustion of Reasonable Means

Licensee was required to exhaust its options for obtaining a restaurant "R" license within the existing county quota before applying for an ED license. Section 3.105 of the PLCB's regulations sets forth the mandatory criteria for an ED license, specifying evidence that establishes the exhaustion of reasonable means requirement. 40 Pa. Code §3.105.

Section 3.105(e) provides that an applicant "shall provide evidence at the administrative hearing" to establish the exhaustion requirement, including the number of contacts with existing licensees about the availability of licenses for

purchase. Specifically, an applicant must show that it contacted equal to or greater than 50% of the existing suitable licensees. 40 Pa. Code §3.105(e)(1)(ii). An applicant must also show it offered to purchase licenses that are in safekeeping at the time the application is filed, including offered and requested amounts. In addition, an applicant must provide evidence as to why it is not economically feasible to purchase an existing license, including its financial resources.

Relevant here, the regulation states that evidence of the exhaustion criterion "includes … [a] written estimation, with supporting documentation, of the expected economic benefits to the municipality if the application is granted." 40 Pa. Code §3.105(e)(4) (emphasis added).

The PLCB maintains the regulation requires an ED License applicant to submit the written estimate of the benefit of the application at the administrative hearing. The only documentary evidence that Licensee submitted during the administrative hearing regarding the expected economic benefits to the Borough was Resolution 12-2015 of Borough Council approving its request for an ED License. However, Licensee presented a written estimate of the economic benefits of issuing an ED License to the trial court. Because Licensee did not present the economic impact document to the PLCB's hearing examiner during the administrative proceedings, the PLCB asserts Licensee did not meet this regulatory requirement.

In support, the PLCB cites Allison v. Pennsylvania Liquor Control Board, 131 A.3d 1075 (Pa. Cmwlth. 2016). There, the PLCB opposed renewal of a license based on criminal incidents and citations. During a *de novo* trial, the court

9

accepted testimony regarding events that transpired after the administrative hearing, as well as subsequent remedial measures the licensee undertook in response to the citations. The lower court reversed the PLCB, and it renewed the license. This Court remanded to the lower court because it was not clear how the subsequent remedial measures and testimony regarding reduced noise affected the trial court's disposition. Because the nonrenewal was based on certain citations and measures, evidence of continuing improvements could not form the basis for the trial court's decision.

This case is distinguishable because it involves the application process. The evidence the trial court considered regarding the economic impact buttressed earlier testimony before the PLCB during the administrative proceeding, and the determination by the Borough that the ED License would benefit the community. The evidence did not concern events that transpired after the hearing as in Allison.

Significantly, a trial court is not limited to the record created before the PLCB, and may accept additional evidence. Irem Temple AAONMS. The trial court accepted additional evidence documenting revenue and expenses, as well as economic projections of the impact on the Borough.

The regulation does not require monetary estimates of the economic impact on the community. Resolution 12-2015 memorializes the Borough's estimation that issuing the ED License to Licensee would economically benefit the community.

10

The PLCB also contends the trial court's determination that Licensee met the exhaustion requirement is not supported by substantial evidence because Agent's testimony about his efforts was vague and undocumented. We disagree.

Unlike the PLCB, the trial court credited Agent's testimony regarding his numerous telephone calls and more than 100 form letters sent to existing licensees inquiring about the availability of their licenses for sale. Specifically, Agent testified as to his personal knowledge of the Borough non-ED licenses kept in safekeeping,[9] and that the licenses were not available for sale. Based on Agent's testimony, the trial court found that non-ED licenses in safekeeping were not available for sale. Tr. Ct., Slip Op., 11/16/17, F.F. No. 5. In these unique circumstances, an offer was unnecessary as Agent, who placed two licenses in safekeeping, knew the licenses were not available for sale to Licensee regardless of price.

Agent also testified as to the going rate for such licenses based on his experience as a liquor license attorney. He advised Licensee of the approximate cost of licenses in the Borough and outside the Borough. Indeed, the PLCB found that licenses in the Borough cost an average of $500,000, and this finding is undisputed. F.F. No. 7. Agent also contacted a liquor license company regarding availability of licenses for sale. Because Agent received no replies to his inquiries of interest as to licenses for sale outside the Borough, there was no reason to specify the price Licensee was willing to offer. F.F. No. 9. The trial court determined these efforts met the exhaustion of reasonable means criterion.

---

[9] Licenses in safekeeping are held for the benefit of the licensees that cease operations for 15 consecutive days or more, and are available when operations resume. See 40 Pa. Code §7.31.

11

The regulation does not require written documentation of the efforts an applicant or its agent undertook in assessing availability of licenses for sale, or approximate fees charged for such licenses. It requires evidence. Agent's credited testimony, supported by the admission of his form letter to licensees inquiring as to availability of licenses for sale, is sufficient evidence here. R.R. at 89a, 188a-99a.

### 3. Evidence of Adverse Effects

Next, we consider whether the trial court erred in determining the record lacked evidence to prove that the granting of the ED License would adversely affect the health, welfare, peace and morals of the community. The PLCB contends the trial court erred because it placed the burden of proof on the PLCB.

However, the PLCB's license refusal grounds must be supported by substantial evidence. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." In re License Renewal Application of Quippan Club License #C-4110 LID #1889, 806 A.2d 491, 495 n.5 (Pa. Cmwlth. 2002).

Here, the record is devoid of any evidence as to alleged adverse effects on the community. As a consequence, that basis for refusing the ED License was unsupported, and the trial court was correct in rejecting it. See, e.g., VRAJ, Inc. v. Pa. Liquor Control Bd. (Pa. Cmwlth., No. 2592 C.D. 2015, filed November 30, 2016), 2016 WL 6994969 (unreported) (reversing trial court because substantial evidence did not establish adverse effects on community); In re 23rd St., Inc., 517 A.2d 581 (Pa. Cmwlth. 1986) (same).

12

Further, the PLCB did not make any findings as to the adverse effects issuing an ED License to iPasta would have on the community. Instead, the PLCB assumed an adverse effect because the makeup of the neighborhood is 50% residential, and it is already served by five other licensees in the area. However, the mere presence of a licensee "is not ordinarily detrimental to the welfare, health and morals of the inhabitants of the neighborhood." 23rd St., 517 A.2d at 582.

The PLCB argues the trial court nonetheless erred in granting the ED License because the location of the Premises within 200 feet of other licensed premises is alone sufficient grounds to refuse the license. However, as discussed above, this proximity does not require refusal of a license. Chadds Ford Tavern.

Additionally, the PLCB's regulations authorize the Borough to determine the economic impact on the community at the outset. See 40 Pa. Code §3.101(a)(3) (issuance of a license when municipality approved issuance for the purpose of local economic development). Section 3.102 requires a municipality to refuse a request for an ED license when approval "would adversely affect the welfare, health, peace and morals of the municipality or its residents." 40 Pa. Code §3.102(b)(3). Here, the Borough Council held a hearing, after which it approved the ED License by Resolution. Contrary to the PLCB's contentions, this indicates that there is no adverse effect upon the Borough.

In sum, based on the administrative record and the *de novo* trial, the trial court found that Licensee met the "reasonable efforts" criterion. 40 Pa. Code §3.105(e). It also found the record contained no evidence to support a denial based

13

on adverse effects on the community. Despite the proximity to other licensees, the trial court exercised its discretion to grant the ED License.

## C. Waiver/Economic Hardship

The PLCB maintains the trial court erred as a matter of law in failing to defer to its narrow construction of the ED exception to the quota system. The PLCB contends that its construction was squarely before the trial court, and the trial court erred in rejecting that construction when it is entitled to administrative deference as to its construction of the Liquor Code and the regulations thereunder. It also asserts the economic hardship argument was sufficiently developed in the administrative and trial court proceedings to enable appellate review. As a result, the PLCB argues the trial court's determination that it waived this argument must be rejected, and its license denial must be reinstated.

Section 703(a) of the Administrative Agency Law states that a party "may not raise upon appeal any other question not raised before the agency." 2 Pa. C.S. §703(a). Similarly, Pennsylvania Rule of Appellate Procedure 1551(a) states that "[n]o question shall be heard or considered by the court which was not raised before the government unit." Pa. R.A.P. 1551(a). Accordingly, an issue not raised before the PLCB will not be considered by this Court on appeal.

Relevant here, before filing its Rule 1925(b) Statement, the PLCB did not use the term "economic hardship" in reference to the ED exception in this matter. P.S. Hysong v. Lewicki, 931 A.2d 63 (Pa. Cmwlth. 2007) (issues not raised in post-trial motions shall not be considered). The term does not appear in the Liquor Code

or in the regulation outlining the criteria for an ED license, 40 Pa. Code §3.105. Further, there is no indication on the record that the PLCB was applying an "economic hardship" criterion to ED licensees generally or to Licensee. Also, the PLCB's opinion makes no reference to the term "economic hardship." See R.R. at 15a-42a.

This appears to be a new criterion developed by the PLCB after the *de novo* trial and the trial court's adverse decision. As a result, this argument is waived. New Oxford Social & Athletic Club v. Pa. State Police, Bureau of Liquor Control Enforcement, 151 A.3d 286, 290 (Pa. Cmwlth. 2016) ("[T]he trial court's review is *de novo*, but only as to those issues properly preserved by appeal."); Manayunk Dev. Corp. v. Pa. Liquor Control Bd., 699 A.2d 1373 (Pa. Cmwlth. 1997).

Regardless of waiver, this Court is unpersuaded that the PLCB may engraft an "economic hardship" criterion onto the Liquor Code or its regulations. This limitation amounts to a new requirement, not a construction of existing terms. As such, the PLCB may not impose it on licensees or prospective licensees without notice to enable prospective licensees to meet this criterion. Moreover, there is evidence that the PLCB granted an ED license to a café located near iPasta just seven months before. R.R. at 199a; 256a-57a. Agent shepherded that licensee through the process as well. Thus, the PLCB did not apply the same criteria to other licensees.

### III. Conclusion

For the foregoing reasons, we affirm the trial court's order.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Domusimplicis, LLC         :
                        :
          v.             :     No. 1930 C.D. 2017
                        :
Pennsylvania Liquor Control Board,  :
             Appellant   :

## **O R D E R**

**AND NOW**, this 14th day of January, 2019, the order of the Court of Common Pleas of Chester County is **AFFIRMED**.

 

 

                               _____

                               ROBERT SIMPSON, Judge