IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Myles Development Company, LLC  :
                                :
            v.                  :    No. 23 C.D. 2019
                                :    Argued: November 12, 2019
Pennsylvania Liquor Control Board,  :
            Appellant           :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: January 16, 2020

The Pennsylvania Liquor Control Board (PLCB or Board) appeals an order of the Court of Common Pleas of Chester County (trial court) that reversed the PLCB's decision to deny the application of Myles Development Company, LLC (Applicant) for an Economic Development Restaurant Liquor License (EDR License). The PLCB argues that the trial court erred in holding that Applicant satisfied the requirements for an EDR License in the Liquor Code[1] and the PLCB's regulations. We affirm.

**Background**

On December 30, 2016, Applicant filed an application for an EDR License for a six-story building located at 2 West Market Street in the Borough of West Chester, also known as the Farmers & Mechanics Trust Company Building or the F&M Building. A. Thomas Myles, IV, is the sole member of Applicant and the sole member of Myles Land & Improvement Company, LLC, which owns the property. Applicant intends to open a fine dining restaurant in the basement and first and second floors of the building. The remaining floors will be leased for offices.

---

[1] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§1-101 – 10-1001.

By letter dated June 21, 2017, the PLCB's Bureau of Licensing (Bureau) notified Applicant that a hearing would be held on July 6, 2017, on the following objections to the application:

1. The proposed licensed premises will be located within 200 feet of another establishment licensed by this Board.

2. The Board shall take evidence to determine whether the [A]pplicant exhausted reasonable means in an effort to find a suitable license within the current county quota scheme,[2] in accordance with Section 3.105 of the Board's Regulations.

3. The Board shall take evidence to determine that the approval of this application will not adversely affect the health, welfare, peace and morals of the neighborhood within a radius of 500 feet of the proposed licensed premises.

Reproduced Record at 94a (R.R. __).

At the hearing, the PLCB's licensing analyst testified that Barnaby's West Chester, Inc. (Barnaby's), a bar and restaurant, is located across the street and approximately 60 feet away from the F&M Building. It is the only establishment with a liquor license that is within 200 feet of Applicant's property. Myles discussed his planned restaurant and his unsuccessful efforts to purchase a retail restaurant liquor license by sending letters of inquiry to the holders of 142 active licenses and

---

[2] The issuance of liquor licenses in Pennsylvania is governed generally by a quota system. *See generally* Section 461 of the Liquor Code, 47 P.S. §4-461 (Limiting number of retail licenses to be issued in each county). The PLCB is authorized to issue a limited number of EDR Licenses in a county outside of the quota system "for the purpose of economic development in a municipality" under certain enumerated conditions discussed more fully below. 47 P.S. §4-461(b.1).

15 licenses in safekeeping.[3]  Myles also testified that the West Chester Borough Council had approved the EDR License, subject to several conditions.[4]

After the hearing, the hearing examiner issued an opinion recommending that the PLCB deny Applicant's application on the basis that it had not exhausted reasonable means of procuring a license within the county quota system.  The hearing examiner noted the presence of another licensed establishment, Barnaby's, within 200 feet of the property, but determined this was not a basis for denying the application because "[t]here was no evidence presented that this would create any problems for the neighborhood[.]"  R.R. 390a.[5]

By order dated August 23, 2017, the PLCB denied Applicant's application for an EDR License. On September 1, 2017, Applicant appealed the PLCB's order to the trial court.  On November 2, 2017, the PLCB filed an opinion

---

[3] A liquor license may be placed in safekeeping with the PLCB pursuant to Section 474.1(a) of the Liquor Code, added by the act of December 9, 2002, P.L. 1653, *as amended*, which states:

 (a) A restaurant, eating place retail dispenser, hotel, importing distributor and distributor licensee whose licensed establishment is not in operation for fifteen consecutive days shall return its license for safekeeping with the board no later than at the expiration of the fifteen-day period. The license may only be reissued from safekeeping in the manner set forth by the board through regulation.

47 P.S. §4-474.1(a).  The PLCB's regulation provides that "[t]he return of the license and card will not invalidate the license, which will be held in safekeeping for the benefit of the licensee and be available for his use when operations are resumed at the licensed premises, or for transfer."  40 Pa. Code §7.31(a).

[4] The Borough Council found that "the issuance of the [EDR License] for the Restaurant will promote economic development within the Borough by enabling a new fine dining restaurant in the Borough which will provide employment and attract customers and patrons to other businesses in the Borough."  Trial Court Opinion at 3.  Applicant agreed to the following conditions in an agreement with the Borough Council: food and non-alcoholic beverage sales of at least 60% of the restaurant's business; sale of alcohol to stop at 12:30 a.m.; premises to close no later than 1:30 a.m.; no live music or entertainment on the premises; and all owners and managers and all individuals who sell or serve alcoholic beverages must successfully complete the PLCB's Responsible Alcohol Management Program (RAMP).

[5] Neither Barnaby's nor any other existing licensee protested Applicant's application.

3

in support of its order stating, *inter alia*, that it had denied the application based on Applicant's failure to exhaust reasonable means to find a license within the county quota system. Additionally, and contrary to the recommendation of the hearing examiner, the PLCB stated that it had, in its discretion, denied Applicant's application based on the proximity of Barnaby's to the proposed licensed premises.

On October 3, 2018, the trial court held a *de novo* hearing at which Patrick Stapleton, Esquire, a former member and chair of the PLCB, testified on behalf of Applicant. While on the PLCB, Stapleton reviewed and voted on "no less than a couple hundred" applications for EDR Licenses. Notes of Testimony, 10/3/2018, at 28 (N.T. __); R.R. 429a. Stapleton focuses more than half of his practice on liquor and beverage law, and he has represented applicants for EDR Licenses in the Borough and elsewhere in Chester County.

Stapleton testified that the Borough has agreed to allow EDR Licenses "over the past number of years." N.T. 28; R.R. 429a. Stapleton testified, based on his experience, that the Borough in practice "refuse[s] to accept licenses - regular R, restaurant licenses from other municipalities in Chester County." N.T. 28; R.R. 429a. After briefly explaining recent legislative changes to intermunicipal transfers of liquor licenses, Stapleton attempted to testify that the Borough has "taken the position" not to allow intermunicipal transfers. N.T. 29; R.R. 430a. The PLCB objected to this statement as hearsay, and the trial court sustained the objection.

Stapleton testified that a recent amendment to the Liquor Code allows the PLCB to auction off expired liquor licenses. He explained that this has changed the EDR License application process. In practice, an applicant must show that it attempted to participate in an auction in order to establish that it exhausted reasonable means to obtain an existing license. Stapleton further testified that,

4

during the relevant timeframe for Applicant's application, only seven licenses were available at auction in Chester County, and none were in the Borough of West Chester. Because the Borough will not allow intermunicipal transfers of liquor licenses, the availability of these licenses for auction did not matter.

A. Thomas Myles testified about his efforts to obtain a license through the county quota system before applying for an EDR License. Myles and his attorney personally spoke with restaurant licensees and individuals with knowledge of restaurant licenses for sale within the Borough. None of these discussions bore fruit. Myles never made an offer to purchase a license because there were none available within the Borough. Because of the Borough's practice of refusing intermunicipal transfers of licenses, Myles concluded there was no point in seeking a license outside the Borough. After his initial efforts to purchase a restaurant liquor license within the Borough were unsuccessful, Myles sought and received approval from the Borough Council to pursue an EDR License.

After gaining approval from the Borough Council, counsel for Applicant sent a letter to every restaurant liquor licensee in Chester County, including all licensees whose licenses were in safekeeping. The letter stated:

> Dear Licensee:
>
> Please be advised that a client of mine is interested in purchasing your R-Liquor License. **Kindly contact this office at your earliest convenience if you are interested in discussing the sale of the above-referenced Liquor License**.
>
> Thank you for your time and consideration. I look forward to hearing from you.

R.R. 150a (emphasis in original).

Applicant received responses from 11 licensees, none of which had licenses in the Borough. Nevertheless, Applicant followed up with all of them. Myles testified that each licensee that responded was willing to sell their license only as part of a sale of their entire business, which included the real estate in some cases. None of the licensees were willing to sell the restaurant liquor license alone. Myles testified that Applicant could not afford to purchase both a liquor license and an entire business, and he offered supporting financial evidence.

Myles testified that he reviewed the PLCB's listings of liquor licenses that were available for purchase at auction. None of the listings included a restaurant liquor license within the Borough. Myles did not bid on any restaurant liquor licenses located outside the Borough because of the Borough's practice of refusing intermunicipal transfers of liquor licenses.

On December 14, 2018, the trial court reversed the PLCB's denial of Applicant's application and ordered the PLCB to issue the EDR License.

The trial court held that Applicant had exhausted all reasonable means to find a license within the existing county quota system. The trial court observed that Applicant had contacted every licensee in Chester County to inquire about the availability of its license for purchase, which is all the PLCB regulation requires. All of the licensees responding to Applicant required the purchase of the business associated with the liquor license. Applicant was not in a financial position to consummate such a transaction, and it was not required under the regulation. The trial court noted that Applicant considered purchasing a license at auction, but there were no auctions of licenses within the Borough. Although there were licenses available for auction in Chester County, the trial court found they were not actually available to Applicant given Stapleton's testimony that the Borough will not approve

6

the transfer of a license from another municipality. The trial court noted that the PLCB presented no evidence to refute Stapleton's testimony. The trial court rejected the PLCB's argument that Applicant had recourse through an appeal of the Borough's denial of a transfer, holding that purchasing a license that is likely not to be accepted by the municipality cannot be considered a "reasonable means" of finding a suitable license. Trial Court Opinion at 10 (quoting 40 Pa. Code §3.105(e)).

The trial court also decided that the proximity of the proposed licensed premises to Barnaby's was not a basis for denying Applicant's application because there was no evidence that issuing an EDR License to Applicant would be harmful to the community. The trial court cited the PLCB's finding that there was no evidence there would be any problems for the neighborhood and that the Borough Council was aware of Barnaby's when it approved the EDR License. The PLCB now appeals the trial court's order.

## Appeal

On appeal,[6] the PLCB raises two issues. First, it argues that the trial court's finding that Applicant exhausted reasonable means to find a suitable license within Chester County's quota system is not supported by substantial evidence. Second, it contends that the trial court erred in concluding that the presence of another licensed establishment within 200 feet of the proposed licensed premises was not in itself a basis for denying Applicant's application for an EDR License.

---

[6] Where a trial court hears a liquor license matter *de novo*, our review determines whether there is substantial evidence to support the trial court's findings or whether the trial court committed an error of law or abused its discretion. *Domusimplicis, LLC v. Pennsylvania Liquor Control Board*, 202 A.3d 836, 840 n.7 (Pa. Cmwlth. 2019).

7

## Analysis

Pursuant to Section 464 of the Liquor Code, a trial court conducts *de novo* review of the PLCB's grant or denial of a license. 47 P.S. §4-464.[7] As such, it may "sustain or over-rule the action of the [PLCB] and either order or deny the issuance of a new license[.]" *Id.* A *de novo* review "contemplates an independent evaluation of the evidence." *Domusimplicis, LLC v. Pennsylvania Liquor Control Board*, 202 A.3d 836, 841 (Pa. Cmwlth. 2019) (quotation omitted). When the trial court conducts a *de novo* review, it "is not restricted to reviewing the established record and may hear new evidence and make independent findings of fact and conclusions of law." *Id.*

"Regardless of whether substantial evidence supports the PLCB's findings, the trial court may reverse a PLCB decision to deny a license provided its own findings are supported by substantial evidence in the record as a whole." *Id.* (citation omitted). "Indeed, in exercising its statutory discretion, the trial court may reverse the PLCB based on identical findings and even when the evidence it hears is substantially the same as the evidence presented to the PLCB." *Id.* (citation omitted).

The issuance of liquor licenses is governed by a quota system. Section 461 of the Liquor Code, 47 P.S. §4-461. Chester County, like most counties, has exceeded its quota. Thus, the PLCB is generally prohibited from issuing new liquor

---

[7] Section 464 states, in pertinent part:

> The court shall hear the application de novo on questions of fact, administrative discretion and such other matters as are involved, at such time as it shall fix, of which notice shall be given to the [B]oard. The court shall either sustain or over-rule the action of the [B]oard and either order or deny the issuance of a new license or the renewal or transfer of the license or the renewal of an amusement permit to the applicant.

47 P.S. §4-464.

licenses there. An applicant seeking a new liquor license must obtain an existing license (1) from an existing license holder; (2) from the PLCB via its periodic auction of expired licenses; or (3) from outside the quota system via a narrow exception in the Liquor Code authorizing the PLCB to issue an EDR License.

Pursuant to Section 461(b.1) of the Liquor Code, the PLCB can issue an EDR License only where specific conditions are met:

> (b.1) The board may issue restaurant and eating place retail dispenser licenses and renew licenses issued under this subsection without regard to the quota restrictions set forth in subsection (a) for the purpose of economic development in a municipality under the following conditions:
>
> > (1) A license may only be issued under this subsection if the applicant has exhausted reasonable means for obtaining a suitable license within the county.
> >
> > (2) The proposed licensed premises must be located within either of the following:
> >
> > * * *
> >
> > > (ii) A municipality in which the issuance of a restaurant or eating place retail dispenser license has been approved by the governing body of the municipality for the purpose of local economic development….

47 P.S. §4-461(b.1).[8] In Chester County, which is a county of the third class, the PLCB may issue a maximum of two EDR Licenses per calendar year. 40 Pa. Code §3.105(a).

---

[8] There is no dispute that Applicant satisfied Section 461(b.1)(2)(ii) by first obtaining West Chester Borough Council's approval of an EDR License for its proposed restaurant.

Section 3.105(e) of the PLCB's regulations explains how an applicant for an EDR License proves that it "exhausted reasonable means for obtaining a suitable license," per 47 P.S. §4-461(b.1)(1):

> (e) In addition to any objections to, or support of, an application for the issuance of a license, an applicant shall provide evidence at the administrative hearing that it has exhausted reasonable means to find a suitable license within the existing county quota law. Evidence includes the following:
>
> > (1) Evidence that the applicant, or the applicant's agent, made contact with existing restaurant liquor licensees, if a restaurant liquor economic development license is sought … in the county.
> >
> > > (i) The purpose of the contact is to inquire as to the availability of the licensee's license for purchase.
> > >
> > > (ii) In counties of the first through fourth class, the number of licensees contacted by the applicant, or the applicant's agent, must be equal to or greater than 50% of the existing restaurant liquor … licensees in the county.
> >
> > * * *
> >
> > (2) Evidence that the applicant, or the applicant's agent, has offered to purchase [] restaurant liquor … licenses in the county that are in safekeeping at the time the application is filed with the Board, including the offered and requested amounts.
> >
> > (3) An explanation as to why it is not economically feasible for the applicant business to pay the amount requested for an existing restaurant liquor or eating place retail dispenser license. The applicant shall provide evidence of the following factors:

10

> (i) The applicant's capital and financial resources.
>
> (ii) The applicant's projected revenue and expenses for its business, as well as actual revenue and expenses if the business is currently in operation.
>
> (iii) Other factors the applicant considered when deciding that obtaining a liquor license in the marketplace was not economically feasible.
>
> (4) A written estimation, with supporting documentation, of the expected economic benefits to the municipality if the application is granted.

40 Pa. Code §3.105(e).

With the above legal framework in mind, we consider the PLCB's issues *seriatim*.

## I.

The PLCB's primary issue is that the trial court's finding that Applicant exhausted reasonable means to find a suitable license within Chester County's quota system is not supported by substantial evidence.

The PLCB asserts that there is no evidence Applicant satisfied Section 3.105(e)(2) of the regulation, which requires an applicant to offer to purchase a license held in safekeeping with the PLCB. Applicant sent letters of inquiry to every licensee in the Borough, but it did not produce evidence of any offer to purchase a license in safekeeping. Applicant did not even specify how many of the 11 responses it received pertained to active licenses versus licenses in safekeeping.

11

The PLCB also argues that the trial court erred in finding that Applicant could not have successfully transferred a license into the Borough because the evidence of record does not support such a finding. Although Applicant's witness, Patrick Stapleton, testified that the Borough would refuse any intermunicipal transfer application, neither he nor Applicant offered supporting statistics or records. No one from the Borough appeared at the hearing to explain the Borough's position on transfers. Relatedly, the PLCB argues that the trial court erred by basing two of its findings of fact[9] on hearsay statements that Applicant tried to elicit from both Myles and Stapleton regarding the Borough's position on intermunicipal transfers.

Finally, the PLCB argues that even if the Borough disapproved an intermunicipal license transfer, Applicant could have appealed that decision to the trial court and ultimately to this Court. In other words, because Applicant had a path to licensure if the Borough rejected its application, it did not need to pursue an EDR License.

In short, the PLCB asserts that the trial court, by agreeing with Applicant that licenses outside the Borough were unavailable to Applicant, relieved Applicant of its duty to exhaust reasonable means of acquiring a license outside the Borough, whether on the open market or via a PLCB auction. We disagree.

---

[9] The challenged findings state:

> 19. West Chester Borough would not accept a liquor license from any other municipality in Chester County. (N.T. 10/3/2018, 18; 28).
>
> * * *
>
> 25. [Applicant] did not attempt to purchase a liquor license at auction from another municipality in Chester County because West Chester Borough would not permit a transfer of the license. (N.T. 10/3/2018, 18; 28).

Trial Court Opinion at 5.

12

Section 3.105(e)(2) of the regulation does, as the PLCB asserts, require evidence that the applicant has offered to purchase a restaurant liquor license in the county in safekeeping, including the offered and requested amount. 40 Pa. Code §3.105(e)(2). However, the trial court credited Myles' unrefuted testimony that none of the licensees that responded to his letters of inquiry, including those with licenses in safekeeping, would sell their liquor license apart from the business to which the license was attached. We agree with the trial court's statement that "Section 3.105(e) does not require [Applicant] to purchase a separate business and additional real estate in order to acquire a liquor license." Trial Court Opinion at 9. Nor does it require an attempt to do so. Applying Section 3.105(e)(2) as suggested by the PLCB would lead to the absurd result of requiring an applicant to offer to purchase a license in safekeeping that is not available as a standalone commodity. A licensee cannot be expected to engage in an exercise in futility.[10]

We next consider the PLCB's claim that substantial evidence does not support the trial court's finding that West Chester Borough would not approve an intermunicipal license transfer. We disagree. Stapleton testified, based on his considerable experience as a former member and chair of the PLCB and as counsel to applicants for liquor licenses, that the Borough "refuse[s] to accept licenses – regular R, restaurant licenses from other municipalities in Chester County." N.T. 28; R.R. 429a. Myles offered similar testimony to explain why he did not make an offer for a license outside the Borough or bid on an auction of an expired license outside the Borough. The trial court credited this evidence, and the PLCB did not offer any

---

[10] This is similar to the result in *Domusimplicis*, 202 A.3d 836, where this Court affirmed the trial court's grant of an EDR License in West Chester Borough. We explained that because the trial court credited the testimony of the applicant's agent that the only licenses in the Borough that were in safekeeping were not for sale, it was unnecessary for the applicant to make vain offers to purchase the unavailable licenses.

13

evidence to show the contrary, *i.e.,* that the Borough will accept intermunicipal license transfers. The PLCB is really challenging the weight accorded to Applicant's evidence, which is beyond this Court's scope of review.

Relatedly, the PLCB argues that the trial court's finding that the Borough would not permit the transfer of a liquor license into the Borough is not supported by substantial evidence because it is based on hearsay testimony to which the PLCB properly objected. However, the PLCB is conflating two distinct points of testimony before the trial court, one of which was not objected to by the PLCB.

The PLCB objected to Stapleton's testimony that the Borough Council has a "position" against permitting transfers of liquor licenses into the Borough, and the trial court sustained the objection on hearsay grounds. N.T. 29-30; R.R. 430a-31a. Although the PLCB objected to "that last part of [Stapleton's testimony] as hearsay," N.T. 29; R.R. 430a, it did not object to Stapleton's prior statement that the Borough has an actual practice of denying transfers of liquor licenses into the Borough. N.T. 28; R.R. 429a. The objected-to testimony about the Borough's "position," which was premised on an out-of-court statement by a third party, was materially different from Stapleton's testimony about the Borough's actual practice, which was based on his experience. Moreover, it bears noting that an entirely different subject of testimony, *i.e.*, Stapleton's synopsis of legislative changes to license transferal, chronologically separated the two statements.

Furthermore, the trial court did not base any of its factual findings on the objected-to testimony about the Borough's "position." The relevant findings on license transfers in the Borough refer only to the Borough's practice. *See* Trial Court Opinion at 5, Finding of Fact No. 19 (finding that the Borough "would not accept" an intermunicipal license transfer) and Finding of Fact No. 25 (finding that the

14

Borough "would not permit" such a transfer). Both of these findings cite to the page of testimony where Stapleton testified as to the Borough's actual practice, not the page where Stapleton attempted to testify that the Borough has taken a "position" on transfers. Stapleton's testimony regarding the Borough's actual practice in handling intermunicipal license transfers was relevant and material to whether Applicant exhausted reasonable means to obtain a liquor license within Chester County's quota system.

Finally, the PLCB asserts that the Borough Council's refusal to allow the intermunicipal transfer of a license could be appealed by right to the trial court and, ultimately, this Court. In other words, Applicant had a path to licensure through the courts if it chose to purchase a license outside the Borough. This argument is unpersuasive. It ignores the issue at hand, which is whether substantial evidence supports the trial court's finding of fact that Applicant exhausted reasonable means to obtain a liquor license within the quota system. Moreover, requiring an applicant to purchase a liquor license and make a futile application for an intermunicipal transfer with the hope of one day prevailing in court goes far beyond "reasonable means" of procuring a suitable license.

## II.

In its second issue, the PLCB argues that the trial court erred and abused its discretion in finding that the presence of another licensed establishment, Barnaby's, within 200 feet of Applicant's property was not, in itself, a basis to deny the application. The PLCB asserts that the trial court erred by requiring additional evidence of harm to the neighborhood in order to reject the application on this basis.

Section 404(a) of the Liquor Code gives the PLCB discretion to deny a liquor license application "if such new license … is applied for a place which is

15

within two hundred feet of any other premises which is licensed by the board[.]" 47 P.S. §4-404(a). However, an application is not automatically disqualified because of the premises' proximity to other licensed establishments. *Domusimplicis*, 202 A.3d at 841; *Chadds Ford Tavern, Inc. v. Pennsylvania Liquor Control Board*, 736 A.2d 70, 73 (Pa. Cmwlth. 1999). A trial court conducting *de novo* review of an application has discretion to determine whether to deny the application based on the premises being closer than 200 feet to a licensed establishment. Section 464 of the Liquor Code, 47 P.S. §4-464 ("[T]he [trial] court shall hear the application *de novo* on questions of fact, administrative discretion and such other matters as are involved.").

Here, the trial court conducted a *de novo* review of Applicant's application for an EDR License. This necessarily included consideration of the fact that the proposed licensed establishment would be closer than 200 feet to an existing licensee. Notwithstanding the PLCB's denial of Applicant's application on this ground, the trial court exercised its discretion in a contrary fashion. The trial court explained its decision by pointing out that there was no evidence that the issuance of an EDR License to Applicant would be harmful to the community. The trial court's opinion does not state that a showing of harm was necessary to warrant denial of an application based on proximity to another licensee. Rather, the trial court explained its rationale, which, arguably, it was not even required to do under the Liquor Code and this Court's precedent.

## Conclusion

In summary, there was ample support in the record for the trial court's determination that Applicant exhausted reasonable means to find a restaurant liquor license within Chester County's quota system before it applied for an EDR License.

16

In concluding that the presence of another licensed premises within 200 feet of Applicant's premises was not a basis for denying its application, the trial court exercised the discretion afforded to it under a *de novo* standard of review. Accordingly, we affirm the trial court's order.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Myles Development Company, LLC    :
                                   :
            v.                   :    No. 23 C.D. 2019
                                     :
Pennsylvania Liquor Control Board,    :
                Appellant         :

## **O R D E R**

AND NOW, this 16th day of January, 2020, the order of the Court of Common Pleas of Chester County dated December 14, 2018, in the above-captioned matter is AFFIRMED.

_____

MARY HANNAH LEAVITT, President Judge