# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marlboro Partners,                 :
             Appellant        :
                                 :
           v.                  :    No. 84 C.D. 2024
                                 :
Pennsylvania Liquor Control Board    :    Submitted: May 6, 2025

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE STACY WALLACE, Judge
                HONORABLE MATTHEW S. WOLF, Judge

## OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE WOLF                                    FILED: June 20, 2025

       Marlboro Partners (Licensee) appeals from the December 19, 2023 order of the Court of Common Pleas of Lehigh County (trial court) affirming the February 8, 2023 decision of the Pennsylvania Liquor Control Board (Board). The Board determined that Licensee's Restaurant Liquor License R-18821 (License) had been revoked by operation of Section 474.1 of the Liquor Code[1] due to Licensee's failure to timely file a transfer application and would not be reinstated. We affirm.[2]

       Licensee first acquired the License by transfer in 2007. The License

---

[1] Act of April 12, 1951, P.L. 90, *as amended*, added by Section 21 of the Act of December 9, 2002, P.L. 1653, 47 P.S. § 4-474.1.

[2] Also before the Court is Licensee's "Praecipe to Schedule Oral Argument on Appellant's Brief and Reproduced Record and Appellee's Brief in Opposition" filed May 5, 2025, which the Court will deny.

has since been in safekeeping pursuant to Section 474.1 of the Liquor Code,[3] with the safekeeping period having been extended several times. In 2016, the Board informed Licensee's owner, Peter J. Laurenzano, that the safekeeping period would expire on September 6, 2017. Reproduced Record (R.R.) at 222a. Clear Creek, LLP (Clear Creek), of which Laurenzano is a partner, filed an application to transfer the License from Licensee to Clear Creek on September 5, 2017. *Id.* at 224a. Licensee applied for renewal of the License while the transfer application was pending. *See id.* at 195a (renewal application for licensing term effective May 1, 2020).

Licensee and the Board's Bureau of Licensing (Bureau) then engaged in a series of communications. First, the Bureau issued a July 7, 2021 letter informing Licensee that the renewal request had been approved and that the transfer application had been "refused by the Board." R.R. at 197a. The letter stated that since the Board had refused the transfer application and Licensee's safekeeping period had expired on September 6, 2017, Licensee had 30 days from the date of the

---

[3] It provides, in relevant part:

> (b) The Board may hold the license in safekeeping for a period not to exceed two consecutive years. Any license remaining in safekeeping for more than two consecutive years shall be immediately revoked by the Bureau of Licensing unless a transfer application or request for reissue from safekeeping has been filed prior to the expiration of the two-year period or unless the board has approved a request to extend the safekeeping for an additional year as set forth in subsection [474.1(g) of the Liquor Code, 47 P.S. § 4-474.1(g) (relating to fees and procedure for extension of safekeeping period)]. In addition, the board shall extend the period for an additional year if, at the end of the two-year period, the licensed premises are unavailable due to fire, flood or other similar natural disaster; no further extension beyond one additional year shall be granted by the board regardless of whether the licensed premises are unavailable due to fire, flood or other similar natural disaster unless an application is made as set forth in subsection (g).

47 P.S. § 4-474.1(b).

letter to do one of three things: (1) file another transfer application, (2) request that the License be reissued from safekeeping and pay the required fee, or (3) file an application to extend the safekeeping period through January 15, 2022, and pay the required fee. *Id.* The letter explained that failure to timely act regarding the safekeeping expiration would lead to revocation of the License. *Id.*

Licensee did not effectively appeal that determination but Laurenzano apparently attempted to do so on July 26, 2021, by filing a "Motion to Appeal Decision of PLCB" in the trial court. The trial court dismissed the motion, partly on the basis that Laurenzano, a nonlawyer, was not authorized to represent Licensee, a business entity.

Next, in response to the attempted appeal, the Bureau issued a new determination by August 17, 2021 letter to "correct and supplement" its earlier letter. R.R. at 200a. The August 17 letter contained the same determinations (that the Board had approved the renewal and refused the transfer to Clear Creek) but updated the compliance period. *Id.* It stated that the safekeeping period had expired October 6, 2017, so Licensee had 30 days from the date of the letter (i.e., until September 16, 2021) to file a transfer, request for reissuance with fee, or apply to extend the safekeeping period with fee. *Id.* The letter gave more detail than the earlier letter about the effect of a timely transfer application. It explained that if Licensee elected to pursue a transfer, "the [transfer] application [must be] in line for approval upon receipt of the investigative report," or else the transfer application would not toll the safekeeping period, and Licensee would need to formally apply to extend the safekeeping period, including by paying a $140,000.00 fee. *Id.* The letter again warned Licensee that failure to submit a transfer application, release request, or extension request would lead to revocation. *Id.*

On September 20, 2021, counsel for the Board informed Laurenzano via email that the Board had voluntarily extended the deadline to file a transfer application to October 5, 2021. R.R. at 203a. The email gave contact information for Timothy LaMark, a Board employee, and directed Licensee to contact him if it encountered technical problems with PLCB+, the Board's online application portal. *Id*.

Finally, by October 18, 2021 letter, the Bureau stated that no application for transfer, reissuance, or extension had been filed, and the safekeeping period was not extended so the License was revoked effective October 6, 2021, by operation of Section 474.1. *Id.* at 206a. Licensee then timely appealed the October 18, 2021 determination.

A Board hearing examiner held an administrative hearing on September 16, 2022. Laurenzano testified that he attempted to file a transfer application but could not complete it because PLCB+ contained erroneous information about the License. He acknowledged that the Board, through counsel, extended the time for filing the application through the first week of October 2021, but testified that the transfer application still "[could] not be submitted" due to technical problems. R.R. at 180a.

The hearing examiner filed an opinion recommending that the Board find the License was properly revoked because no transfer application was timely filed. *Id.* at 117a-18a. The Board, in its February 8, 2023 Order, determined that the License was properly revoked and would not be reinstated. *Id.* at 106a. Licensee timely appealed to the trial court.

The trial court held a *de novo* hearing on June 28, 2023. Laurenzano testified that in response to the August 17, 2021 letter, he chose to submit a transfer

application. He explained that he and Stuart Mostinsky had agreed to terms for Mostinsky to purchase the License. Laurenzano stated that he repeatedly tried to complete the transfer application through PLCB+ beginning on July 13, 2021. He showed documentary evidence of a notification from PLCB+ that "the [license identification number] entered is not valid." R.R. at 392a-93a. He attempted to contact the numbers provided for technical assistance in the July 7, 2021 letter but they were not working numbers. He testified he eventually spoke with someone at the Board, who told him the application could only be completed through PLCB+, not on paper.

After the August 17, 2021 letter, Laurenzano explained, he tried several times again to submit the application and received the same error message, so he contacted the Board and its counsel. In response, the Board extended the deadline for filing until October 5, 2021. Laurenzano acknowledged that Board counsel's September 20, 2021 email gave LaMark's email address for help with technical difficulties. But Laurenzano stated he never attempted to contact LaMark because "[Mostinsky] had instructed [Laurenzano] to tell him when the system was operating properly" and "until it was proper, he couldn't submit the application." R.R. at 412a; *see id.* at 437a-38a, 454a. He gave no further explanation.

Mostinsky gave similar testimony that he also made several attempts to complete a transfer application on PLCB+ but was unable to do so. *Id.* at 465a-66a.

LaMark, the Board's Chief of Licensing Systems, Program Management Division, testified that he oversees PLCB+, the online regulatory system used since 2016 to renew and transfer liquor licenses. He explained he and his department are available by phone and email to assist PLCB+ users with technical problems. He was aware that Board counsel provided his contact

information to Laurenzano in September 2021, and he testified that no one "from [Licensee] or [any] potential transferee or applicant" contacted him about this case from that time forward. R.R. at 354a.

The trial court affirmed the Board's order. It found as fact that no transfer application (or other application contemplated in the letters to Licensee) was timely filed. R.R. at 529a-30a. The trial court reasoned as follows:

> [Licensee] has not established that its efforts were exhaustive. [Licensee] had other options available and chose not to pursue them. To direct one's efforts solely in one direction and only that one direction regarding the process under the PLCB+ was not sufficient to establish that full compliance was impossible for reasons beyond [Licensee]'s control. Telephone numbers and emails were provided for assistance. These avenues were not sufficiently pursued by [Licensee]. Those avenues were well within [Licensee]'s control to pursue. As such, this court cannot deem that it was impossible for [Licensee] to comply with any of the options it had before it.

> Credible testimony was presented by LaMark that he and his team were available, upon calling a phone number or emailing, to assist people trying to use PLCB+ and make corrective measures to ensure that they are able to file what they want to file.

> While the transfer applications were required to be filed through PLCB+, there were clear personal conduits in place to assist applicants in the event of electronic complications or barriers. Laurenzano acknowledged this.

R.R. at 531a-32a. Based on those findings, the trial court concluded that Licensee failed to prove it had fully attempted to comply with Section 474.1(b), and the License was properly revoked. Licensee appealed to this Court.

6

On appeal,[4] Licensee argues the License should not be considered revoked by operation of Section 474.1(b). Licensee claims it made good faith efforts to file the transfer application and was unable to complete the application process through no fault of its own, solely because the PLCB+ filing system malfunctioned. Licensee cites cases where the Board has allowed additional time to submit a transfer application if timely compliance was not possible, and it erred in not doing that here. Licensee argues the trial court erred in finding Licensee did not engage in "exhaustive" efforts to complete the application, both because that is the wrong standard (it should have focused on good faith, not "exhaustive," efforts) and because the record would support a finding that Licensee made good faith efforts to complete the application. In support, Licensee cites our decision in *Club 530, Inc. v. Pennsylvania Liquor Control Board* (Pa. Cmwlth., No. 855 C.D. 2016, filed Mar. 29, 2017), slip op. at 11, 2017 WL 1162448,[5] where we affirmed a trial court's use of its discretion to find a license should not have been revoked under Section 474.1.

The Board responds that Licensee merely seeks to relitigate the facts before this Court.[6] The Board argues that the trial court acted within its discretion to find that Licensee had not engaged in sufficient good faith efforts at filing a

---

[4] Our review in a liquor license revocation case determines whether the trial court's findings of fact are supported by substantial evidence and whether the trial court committed an error of law or abused its discretion. *Pa. Liquor Control Bd. v. Bartosh*, 730 A.2d 1029 (Pa. Cmwlth. 1999).

[5] Unreported opinions of this Court filed after January 15, 2008, may be cited for their persuasive value. Pa.R.A.P. 126(b); 210 Pa. Code § 69.414(a).

[6] On this basis, the Board claims Licensee has so misunderstood the proper standard of appellate review that Licensee has waived any issue it could raise on appeal. *See* Board's Br. at 14-16. While that could be a basis for rejecting Licensee's arguments after considering them, it is not a basis for finding waiver. Licensee frames the issue clearly, fully develops arguments, and cites the Liquor Code and this Court's caselaw. We reject the Board's waiver argument.

transfer application to warrant any discretionary relief or extension of time. The Board also relies on *Club 530*, and emphasizes that there, we deferred to the trial court's finding that the licensee had engaged in sufficient good faith efforts, whereas here the trial court found the opposite, and we should also defer. The Board emphasizes that it is not the label the trial court affixed to its decision (i.e., "exhaustive" efforts versus good faith efforts) which controls, but rather the trial court's supported finding that Licensee had courses of action available that it never took, such as contacting LaMark for assistance.

The trial court is the ultimate factfinder in appeals from the Board. We have explained:

> Pursuant to Section 464 of the Liquor Code, a trial court conducts *de novo* review of the [Board]'s grant or denial of a license. 47 P.S. § 4-464. As such, it may "sustain or over-rule the action of the [Board] and either order or deny the issuance of a new license[.]" *Id.* A *de novo* review "contemplates an independent evaluation of the evidence." *Domusimplicis, LLC v.* [*Pa. Liquor Control Bd.*], 202 A.3d 836, 841 (Pa. Cmwlth. 2019). When the trial court conducts a *de novo* review, it "is not restricted to reviewing the established record and may hear new evidence and make independent findings of fact and conclusions of law." *Id.*

*Myles Dev. Co., LLC v. Pa. Liquor Control Bd.*, 224 A.3d 1119, 1124 (Pa. Cmwlth. 2020) (footnote omitted). The trial court "is empowered to determine the weight and credibility of the evidence[ and] resolve conflicts in the evidence, and is free to reject even uncontradicted testimony." *770 Ameribeer, Inc. v. Pa. Liquor Control Bd.*, 318 A.3d 998, 1009 (Pa. Cmwlth. 2024). On appeal, this Court does not re-weigh evidence or reassess credibility. *Id.* at 1010.

We agree with the Board that the trial court acted within its discretion

8

to conclude the License was properly revoked. The trial court found as fact that when Licensee communicated with the Bureau about the technical difficulties it experienced, the Bureau offered an extension of time and LaMark's contact information with direction to contact him about future technical problems. The trial court also found that Licensee did not avail itself of that assistance and did not file a transfer application. That finding is plainly supported by both Laurenzano's and LaMark's testimony. Finally, the trial court concluded that Licensee could have reasonably undertaken further efforts to assure the filing of a timely transfer application—including by contacting LaMark—but did not do so, and that this fell below the standard of good faith. This is supported by Laurenzano's testimony, which gave no coherent explanation of why he could not have contacted LaMark.

Licensee's reliance on *Club 530* is misplaced. There, "the trial court determined that [the l]icensee *made every good faith effort* to successfully reinstate its License but failed to do so for reasons beyond its control," so it held that the license could not be considered revoked by operation of Section 474.1(b). Slip op. at 11 (emphasis added). We affirmed because the trial court had acted within its discretion. *Id.* Here, although the trial court used a different word—"exhaustive"—it made the opposite factual finding: that there were further, reasonable things Licensee could have done to act timely and it did not do those things, so the failure to timely file was not beyond Licensee's control.

As we have recently put it, "having accepted the privilege of licensure, Licensee was responsible for complying with all applicable statutory filing deadlines," and it must "act with '*the highest degree of responsibility*' to maintain that privilege." *Am. Truck Plazas, LLC v. Pa. Liquor Control Bd.*, 332 A.3d 875, 882 (emphasis added) (quoting *770 Ameribeer*, 318 A.3d at 1005). The trial court's

9

adequately supported findings here amount to a conclusion that the failure to file a timely transfer application was not due to factors beyond Licensee's control. We cannot conclude that the trial court erred or abused its discretion in so finding.

Accordingly, we affirm the trial court's order.

_____
MATTHEW S. WOLF, Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| Marlboro Partners, | | : | |
| | Appellant | : | |
| | | : | |
| v. | | : | No. 84 C.D. 2024 |
| | | : | |
| Pennsylvania Liquor Control Board | | : | |

# **O R D E R**

AND NOW, this 20th day of June 2025, the December 19, 2023 order of the Court of Common Pleas of Lehigh County is AFFIRMED.

Further, Appellant's "Praecipe to Schedule Oral Argument on Appellant's Brief and Reproduced Record and Appellee's Brief in Opposition" is DENIED.

_____
MATTHEW S. WOLF, Judge